## POWELL v. COMMISSIONER OF INTERNAL REVENUE.
### No. 3239.

Circuit Court of Appeals, First Circuit.
Jan. 26, 1938.

James O. Wynn, of New York City (Thomas G. Haight, of Jersey City, N. J., and Robert H. Montgomery and J. Marvin Haynes, both of Washington, D. C., on the brief), for petitioner for review.

Ellis N. Slack, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Lucius A. Buck, Sp. Assts. to Atty. Gen., on the brief), for the Commissioner.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is a petition to review an order or decision of the Board of Tax Appeals. The Commissioner determined a deficiency of $8,882.12 in the petitioner's income tax return for the year 1930. In determining the deficiency, the Commissioner passed upon two questions: First, was the sum of $9,-442.38, which the petitioner spent for traveling expenses, expended in connection with a trade or business regularly carried on by him? The Commissioner disallowed it as a deduction in determining the deficiency; but before the Board of Tax Appeals he conceded that traveling expenses in that amount were paid out by the petitioner in 1930, and the Board found that sum was expended by him while away from home in pursuit of his trade or business and was an ordinary and necessary expense paid during the taxable year for carrying on his trade or business. No question in relation to that is before us on this petition. The main question is whether the petitioner is entitled to a deduction of $86,135.11, which he claims to have lost in the sale of shares of stocks and notes. The Commissioner disallowed nearly

all of this amount, determined a deficiency in the sum of $8,882.12, and the Board affirmed the Commissioner's determination to the extent of $7,687.20. It is from this order or decision that the petition for review is prosecuted.

■■ The alleged losses here in question, the disallowance of which as a deduction was affirmed by the Board, arose out of alleged sales of the following stocks and notes:

| | Number sold | Cost | Amount realized | Claimed loss |
|---|---|---|---|---|
| American Hawaiian Steamship Co. shares | 200 | $ 6,705.00 | $ 1,627.00 | $ 5,078.00 |
| Atlas Tack Corporation, shares............ | 3,150 | 31,302.02 | 9,092.44 | 22,209.58 |
| Manhattan Co. shares................... | 525 | 63,525.00 | 37,714.18 | 25,810.82 |
| 1052 First Avenue, Inc., notes of $41,000 face value ........................... | | 41,000.00 | 24,947.75 | 16,052.25 |
| | | | | $69,150.65 |

It appears that the petitioner was the sole trustee of a trust, known as the B. O. Powell Trust, established by his wife shortly prior to 1930, from property largely given her by the petitioner; that the income of the Trust was payable to the wife for life at such times and in such amounts as the petitioner, in his discretion, saw fit; that he had extremely broad powers and a practically unlimited discretion in dealing with the Trust property, and could buy from, sell to, borrow from, or lend to, the Trust, and "exercise all the powers of owner of the Trust Estate"; and that, during the period of the transactions here involved, the Trust was in existence.

As to the 200 shares of American Hawaiian Steamship Company stock it appears that the petitioner, on December 1, 1930, directed Spencer, Trask & Co., brokers, to sell 200 shares of that stock for his individual account, and, on the same day, instructed F. S. Moseley & Co., brokers, to purchase for him as trustee a like amount of the same stock, and that the brokers sold and bought the 200 shares as directed at the market price prevailing for the stock on the New York Stock Exchange on that day; that, on January 26, 1931, after the lapse of thirty days from the alleged sale, the petitioner as trustee of the Trust directed Moseley & Co., brokers, to sell for the Trust 200 shares of the Steamship Company's stock, and, as an individual, to buy for him 200 shares of the stock, which transactions the brokers effected at the market price pre-

vailing on the New York Stock Exchange on that day.

The next transaction relates to 3,150 shares of the stock of the Atlas Tack Corporation. As to this stock it appears that the petitioner, on December 1, 1930, directed Moseley & Co. to sell 3,150 shares of that stock for his individual account and to purchase a like amount of the same stock for the Trust; and that the brokers effected the transactions at the market price prevailing on the New York Stock Exchange on that day; that on January 26, 1931, and more than thirty days after the date of the alleged sale, the petitioner directed Moseley & Co. to sell for the Trust 3,150 shares of the Atlas Tack Corporation stock and to purchase for him individually a like number of shares; and that the brokers effected these transactions at the market price prevailing on the New York Stock Exchange on that day.

As to the alleged sale of the 525 shares of the Bank of the Manhattan Company it appears that the petitioner in the latter part of December, 1930, was the owner of 525 shares of stock in that company, which he had pledged as collateral for a loan at the Chase Bank; that the Trust owned a like amount of the same stock; that on December 29, 1930, the petitioner borrowed the 525 shares belonging to the Trust and pledged them with the Chase Bank in substitution for his own shares pledged to that bank; that, on the same day, as a favor to the petitioner, the New York & Hanseatic Corporation, a trading company, received from the petitioner the 525 shares of the Manhattan Company stock he had taken out of pledge at the Chase Bank and gave him a check for $37,714.18, the then current price for the stock; and delivered 525 shares of the same stock to the petitioner as trustee for the Trust and received from the Trust $37,714.18; that the petitioner then deposited the check for $37,714.18 which he, as an individual, had received from the

New York & Hanseatic Corporation, in a bank to the account of the Trust as security for the stock which he had borrowed from the Trust; that, thereafter, the Trust paid interest to the petitioner on the $37,714.18 and received the dividends on the stock, loaned to the petitioner and pledged with the Chase Bank, down to May 18, 1931; that on that day, and more than thirty days after the alleged transactions of December 29, 1930, the petitioner bought from the Trust the 525 shares which he had borrowed and pledged with the Chase Bank, paying the Trust therefor $38,325, the then current price of the stock.

As to the transactions relating to the demand notes of the face value of $41,000, the obligations of a company known as 1052 First Avenue, Inc., it appears that the petitioner owned these notes, having received them for loans made to that corporation and for interest accruing on the loans; that he owned all of the stock of the 1052 First Avenue, Inc.; that in November, 1930, he knew that the corporation had completed a transaction in real estate whereby it was shortly to receive $25,000 in cash which was to be used in paying $25,000 on the principal of the notes held by him, which were its only obligations, and that the notes were not in default; that on or about November 12, 1930, the petitioner placed the notes for $41,000 on sale at the Boston Auction, an open market where properties are auctioned off after they have been advertised, and directed his brokers to buy them on behalf of the Trust by an opening bid of $25,000, to be followed, in case others bid, by bids not to exceed the face value of the notes; that the petitioner was willing to permit the notes to go to outsiders for about $40,000; that the brokers carried out his instructions and bid in the notes for the Trust for $25,-000; that the petitioner received $24,947.45 of the amount bid; that 1052 First Avenue, Inc., paid to the Trust $25,000 on the notes for $41,000, and then gave to the Trust a new note for $20,000 to cover the balance of the principal ($16,000) and accrued interest ($4,000) due on the original notes; that, on January 29, 1931, the petitioner acquired the $20,000 note from the Trust directly, he acting as trustee for the Trust.

The above facts as to the transactions concerning the shares of stock and notes are but a restatement by the Board of the testimony given by the petitioner and the documentary evidence in the case, and are not in dispute. The petitioner also testified that he had no understanding or agreement that he would have a right to repurchase at any time the stock and notes; that he had no option to repurchase a similar amount of stock from any one; and that he had no intention of repurchasing any of the stocks and notes at any time in the future.

The gist of the decision of the Board of Tax Appeals was that, "taking all the evidence into consideration, the petitioner never intended to finally and completely dispose of any of the stocks and notes"; that "the sales were not final dispositions but mere steps in an effective plan to establish losses for income tax purposes"; and that "the petitioner sustained none of the alleged losses for the year 1930."

In its opinion it also states that the "only evidence in the record of his intention is his testimony, that he did not intend to reacquire any of the property, and his acts." It refused to believe the testimony as to his intention, saying that "sometimes the acts of an interested witness speak louder than his words. Such is the case here." The Board was not obliged to believe him, for his testimony was belied by his acts in every one of the transactions, which showed that he had formed a plan for carrying out each transaction and that each was carried out accordingly so as to leave him in the same position of ownership that he would have been in had the alleged sales or transactions not taken place.

Our authority in reviewing an order or decision of the Board of Tax Appeals is limited to questions of law and fair trial, and the only question of law here presented is whether there was substantial evidence to support the finding of the Board—that, at the time of the alleged sales of the stocks and notes, the petitioner did not intend finally and completely to dispose of them. We are satisfied there was substantial evidence to support the finding and that the Board did not act arbitrarily in finding as it did. Slayton v. Commissioner, 1 Cir., 76 F. 2d 497.

The petitioner, however, seems to think that the record in this case presents a situation different from that in the ordinary case of a review by this court of an order or decision of the Board, in that Mr. Smith, who heard the testimony, dissented from the majority opinion of the Board as to whether petitioner intended at the time of the alleged sales or transactions to repurchase the securities; that Mr. Smith's determination

and report to the Board on this question must have been in accordance with his dissent, and, if so, the Board could not have reversed his determination without finding that it was clearly wrong.

The record discloses that Mr. Smith was the only member who took the evidence and heard the case and, as a proceeding before the Board is to be heard in the first instance by a division (45 Stat. 871, § 601, 26 U.S.C.A. §§ 603(c), 617(c, d, e), 618(a, b), it is to be presumed that he was the sole member of the division. But the determination and report Mr. Smith made to the Board is not a part of the record in this case. This also is in accordance with the law, which provides: "The report of a division shall not be a part of the record in any case in which the chairman directs that such report shall be reviewed by the Board." Section 601, 26 U.S.C.A. § 618(b). It further appears in the record that a review was had and that on June 3, 1936, the Board made its findings of fact and rendered an opinion in the case; that Mr. Smith dissented and Mr. Leech concurred in the dissent; and that, following the promulgation of the findings of fact and opinion, by the Board, the Board, on July 6, 1936, entered its decision reading:

"Pursuant to the Board's findings of fact and opinion, promulgated June 3, 1936, the respondent on June 16, 1936, having filed a proposed computation, and the petitioner on July 1, 1936, having filed notice of acquiescence to the said computation, it is ordered and decided that there is a deficiency for the year 1930 in the amount of $7,687.20."

The determination and report of Mr. Smith, as a division of the Board, not being a part of the record in the case, as the law required that it be excluded therefrom, we are not at liberty to infer what his determination and report was.

The Board of Tax Appeals consists of sixteen members. Volume 3, Prentis-Hall Federal Tax Service, 1938, p. 22011. And the procedure to be followed before the Board is outlined in section 601 of 45 Stat. 871, amending section 906 of the Revenue Act of 1924, 26 U.S.C.A. §§ 603(c), 617 (c, d, e), 618(a, b). Under section 906, as amended, the chairman of the Board is authorized from time to time to divide the Board into divisions of one or more members and assign the members of the Board to their respective divisions; and, when a division consists of more than one member, the chairman of the Board is to designate the chief of the division; and a division is to hear and make a determination upon any proceeding assigned to it by the chairman and make a report to the Board of any such determination. Section 906 (a), as amended, 26 U.S.C.A. §§ 603(c), 618(a). And section 906 (b), as amended, 26 U.S.C.A. § 618(b) provides that "The report of the division shall become the report of the Board within 30 days after such report by the division, unless within such period the chairman, has directed that such report shall be reviewed by the Board"; and that, when the chairman has so directed, "the report of a division shall not be a part of the record in any case." In other words that thereafter the case shall stand as though no determination and report had been made by the division and is to be decided by the Board on the evidence submitted at the hearing before the division. The exclusion from the record of the determination and report of a division when a review is directed by the chairman was evidently inserted by Congress in the statute to prevent the raising of just such a question as is here sought to be raised by the petitioner.

Furthermore, the petitioner was a highly interested witness, and he was also the sole witness as to his intention at the time of the alleged sales of the stocks and notes, and the subject matter of his testimony concerned his intention or state of mind at that time. In this situation we do not think that the Board was bound to accept his testimony as true, and that this is especially so under the circumstances here presented, as his testimony as to his intention does not accord with his acts but is in direct conflict with them.

The order or decision of the Board of Tax Appeals is affirmed.