In re **SOUTHERN INDUSTRIAL BANKING CORPORATION,** d/b/a Daveco, Debtor.

Thomas E. **DUVOISIN, Liquidating Trustee, Plaintiff,**

v.

**STATE OF TENNESSEE, John Neff, Mary Nicely, Bernard McCray, Ed Yager, Kyle Blalock, Tom Hamm, and Harold Borum, Defendants.**

Bankruptcy No. 3–83–00372.
Adv. No. 3–85–0005.

United States Bankruptcy Court,
E.D. Tennessee.

May 20, 1985.

Dearborn & Ewing, James R. Kelley, M. Clark Spoden, Nashville, Tenn., for plaintiff.

William H. Farmer, Advocate Atty. Gen., Kate Eyler, Deputy Atty. Gen., Nashville, Tenn., for defendants State of Tenn., John Neff in his official capacity, Mary Nicely, Bernard McCray, Ed Yager, Kyle Blalock, Tom Hamm and Harold Borum in their official and individual capacities.

Littleton, Weed, Hubbard & Seaman, William B. Hubbard, Nashville, Tenn., for defendant John Neff in his individual capacity.

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the statute establishing the defendants' examining and regulatory duties under the Tennessee Industrial Loan and Thrift Companies Act imposes upon defendants any actionable duty owing to the institution regulated. Tenn.Code Ann. § 45–5–101 to –504 (1980).

I

Plaintiff, as Liquidating Trustee for Southern Industrial Banking Corporation, originally commenced this adversary proceeding on January 17, 1985. In the original complaint plaintiff sought to recover over $45 million in monetary damages from both the State of Tennessee and the individual named defendants. The gravamen of the complaint is that SIBC's insolvent condition (leading to the filing of its chapter 11 petition on March 10, 1983) was attributable in part to the "negligent examination, regulation, and oversight of SIBC" by the defendant Neff in his capacity as Commissioner of Insurance and by the defendants Nicely, McCray, Yager, and Blalock in their capacity as examiners.

More specifically, plaintiff alleges that in examining SIBC for 1980, 1981, and 1982 the individual defendants did not properly examine SIBC's commercial loan portfolio. Had they done so, plaintiff contends, they would have discovered a series of insider loans for which SIBC had inadequate security, inadequate loan documentation, and no prospect of repayment. Plaintiff asserts that the individual defendants "should have discovered these commercial loans and required SIBC to write them off and to cease such unsound lending practices." Plaintiff further asserts that had defendants properly examined, discovered, and valued the worthless insider loans, defendants would have discovered SIBC's insolvency and would have required remedial action, caused SIBC to obtain additional capital, or closed SIBC.

On March 8, 1985, plaintiff filed an amended complaint. Plaintiff added defendants Hamm and Borum as individual defendants. Plaintiff dropped its prayer for monetary damages against the State of Tennessee.[1] The gist of the amended complaint is essentially the same as the original complaint, although plaintiff additionally avers that SIBC was subject to a statutory requirement under the Industrial Loan and Thrift Companies Act to maintain a stated capital and surplus of $25,000. Plaintiff further avers that the individual defendants were obligated to examine institutions such as SIBC "in accordance with the purpose of the Industrial Loan & Thrift Act and thereby attempt to determine whether the institutions were operating properly and in accord with accepted accounting and lending principles."

Thus, both the original complaint and the amended complaint essentially set forth causes of action asserting tort liability for negligence.

The individual defendants have filed a motion under Bankruptcy Rule 7012(b) to dismiss the amended complaint for failure to state a claim upon which relief can be granted. The State of Tennessee and the other named original defendants filed a motion to dismiss the original complaint, and subsequently the State of Tennessee and all named defendants in their official capacity also filed a motion to dismiss the amended complaint.

Plaintiff has since filed a motion for leave to file a second amended complaint. By this motion plaintiff seeks to amend and assert that the individual defendants "knowingly, willfully, and intentionally" failed to properly examine SIBC or to take action authorized by Tennessee law.[2] Defendants have filed a written consent to plaintiff's motion for leave to file the second amended complaint.

## II

This court is persuaded that defendants' motions to dismiss should be granted.

■ Before addressing the merits of the motions the court will briefly discuss its jurisdiction respecting such an order. Involving as it does a state law claim for damages against persons not asserting a claim against the bankruptcy estate, this adversary proceeding is clearly not a core proceeding. 28 U.S.C.A. § 157(b)(2) (West Supp. 2 Sept. 1984). *See also Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

Pursuant to 28 U.S.C.A. § 157(c)(1) (West Supp. 2 Sept. 1984) this court "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." In such a proceeding this court must submit proposed findings of

---

**1.** Plaintiff continues to seek injunctive relief to prevent the State of Tennessee from relying on a one year limitations period to bar a claim by plaintiff for damages in the State Board of Claims.

**2.** In support of this contention plaintiff asserts in the proposed second amended complaint that

in May 1982 defendant Yager reported to defendant Hamm that approximately 60% of SIBC's loans violated the statutory limitation on the size of loans to a single borrower. Plaintiff asserts that the only action by defendants was a letter asking SIBC what corrective action its Board of Directors planned to take.

fact and conclusions of law to the district court and "any *final* order or judgment shall be entered by the district court." 28 U.S.C.A. § 157(c)(1) (West Supp. 2 Sept. 1984) (emphasis supplied).

In determining what constitutes a "final order" for purposes of § 157(c)(1) this court will look for guidance to the extensive "final order" jurisprudence that has developed in the context of appeals brought under 28 U.S.C.A. § 1291 (West Supp.1985) granting Courts of Appeal jurisdiction of final decisions from district courts. *See In re Lion Capital Group,* ¶ 70, 259 Bankr.L. Rep. (CCH) at 86,487 (Bankr.S.D.N.Y.1985) (precepts applicable to § 1291 determination would apply "[a]bsent any evidence that Congress meant to accord the term 'final order or judgment' as used in 28 U.S.C. § 157(c) a different meaning from that attached to it under 28 U.S.C. § 1291"). *See also International Horizons, Inc. v. Committee of Unsecured Creditors,* 689 F.2d 996 (11th Cir.1982) (court of appeals would look to 28 U.S.C. § 1291 "final order" jurisprudence in determining whether it was presented with final and appealable order for purposes of statute providing that in bankruptcy cases court of appeals has jurisdiction of appeal from final judgment, order, or decree of district court).

■ An order dismissing a complaint is a final decision under 28 U.S.C.A. § 1291 if it is " 'clear that the court determined that the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make.' " *Azar v. Conley,* 480 F.2d 220, 223 (6th Cir.1973) (quoting *Ruby v. Secretary of United States Navy,* 365 F.2d 385, 387 (9th Cir.1966)). *See also* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3914 (1976). As this court is persuaded that neither the plaintiff's second amended complaint, nor any subsequently amended complaint, can cure

plaintiff's failure to state a claim upon which relief may be granted, the granting of defendants' motions to dismiss constitutes a final order under 28 U.S.C.A. § 157(c)(1). Pursuant to § 157(c)(1), therefore, this court submits these proposed findings of fact and conclusions of law to the district court for review and entry of a final order in accordance with § 157(c)(1).

### III

For purposes of the individual defendants' motion to dismiss for failure to state a claim, the court must take as true the allegations of plaintiff's first amended complaint. *L'Orange v. Medical Protective Company,* 394 F.2d 57 (6th Cir.1968).

Defendants argue essentially two contentions in support of their motion to dismiss: (1) the absence of a duty to SIBC under the Industrial Loan and Thrift Companies Act to determine the financial soundness of SIBC and (2) their quasi-judicial immunity from liability for discretionary acts within the scope of their employment, absent willful, malicious, or corrupt conduct.[3]

Although defendants' arguments sometime blur the distinction, defendants' contentions with respect to their duty under the applicable statute are essentially twofold. First, defendants maintain that the statute imposed absolutely no duty upon them to examine institutions for financial soundness. Secondly, defendants maintain that the statute did not create a duty owing by defendants to SIBC in the performance of their statutory duties.

This court must reject defendants' argument that they owed no duty whatsoever under the statute to examine for financial soundness. Defendants emphasize that prior to SIBC's bankruptcy the statutory scheme for regulation of industrial loan and thrift companies was considerably more limited than the statutory scheme for regulation of state chartered banks. *Compare* Tenn.Code Ann. §§ 45–2–101 to –1719

---

3. Both the State of Tennessee and the individual defendants advanced in their various briefs arguments respecting the lack of duty. Only the individual defendants advanced the argument based on quasi-judicial immunity. Because of its holding regarding the question of duty the court need not decide the issue of qualified immunity.

(1980) *with* Tenn.Code Ann. §§ 45–5–101 to –504 (1980). Defendants also point out that following the SIBC debacle the state legislature amended the Industrial Loan and Thrift Companies Act to provide that institutions covered by the statute would be "supervised and examined as banks for the protection of holders of investment and thrift certificates." Tenn.Code Ann. § 45–5–601 (Supp.1984).

Be that as it may, it does not follow that the prior statute imposed no duty whatsoever upon defendants respecting examination for financial soundness. Defendants rely upon *Madison Loan & Thrift Co. v. Neff,* 648 S.W.2d 655 (Tenn.App.1982). Despite defendants' interpretation, however, the holding of *Madison Loan & Thrift* does not stand for the categorical assertion that defendants had no duty to examine for financial soundness. In *Madison Loan & Thrift* the plaintiff industrial loan and thrift company desired to issue investment certificates. The plaintiff requested the commissioner to promulgate rules defining limitations on the issuance of investment certificates. The plaintiff also sought the commissioner's confirmation that he was obligated to examine such companies for soundness of financial condition. Upon the commissioner's refusal to issue a rule in accordance with the plaintiff's request, the plaintiff sought a declaratory judgment. The court noted that nowhere in the statute setting forth the requirements for issuance of investment certificates was there "any provision that the Commissioner must examine industrial loan and thrift companies' financial soundness as a prerequisite to the issuance of an investment certificate." *Madison Loan & Thrift,* 648 S.W.2d at 658. The court observed further that in order to be able to issue investment certificates the plaintiff need only comply with the specific statutory requirements. There was no allegation that the plaintiff would be unable to issue investment certificates because of the commissioner's failure to issue the requested rules. Thus, *Madison Loan & Thrift* simply held that where the statute clearly set forth the requirements for issuance of investment certificates, and

included no specific requirements regarding financial soundness, the commissioner was neither required nor authorized to enlarge upon the statutory requirements and engraft additional financial soundness requirements respecting the issuance of investment certificates.

That is far from saying that the commissioner never has a duty to examine for financial soundness even in the face of an explicit statutory requirement pertaining to the institution's financial condition. Were *Madison Loan & Thrift* to be read so broadly it would run afoul of plain statutory language. As a condition of registration under the statute, an industrial loan and thrift was required to have "a total stated capital and surplus of at least twenty-five thousand dollars ($25,000) for each such certificate of registration." Tenn. Code Ann. § 45–5–201(3) (1980). The statute provided that upon the filing of an application for registration "the commissioner shall investigate the facts concerning the application and the information contained therein." Tenn.Code Ann. § 45–5–202(b) (1980). Further, the statute authorized the commissioner to examine all books and records of a registrant "for the purpose of discovering violations of this chapter." Tenn.Code Ann. § 45–5–501(g) (1980). Finally, the statute required the commissioner to submit to the governor and legislature "an analysis and recapitulation" of the annual report filed by each registrant. Tenn.Code Ann. § 45–5–503(d) (1980). The annual report so reviewed by the commissioner was to contain "[b]alance sheets, statements of income and expense, summaries of the types of loans made, and such other statistical information as may reasonably be required by the commissioner, consistent with generally accepted accounting practices, for the purpose of determining the general results of operations under this chapter." Tenn.Code Ann. § 45–5–503(4) (1980).

■ In the face of such statutory provisions this court finds unpersuasive defendants' contention that they had no duty to examine for financial soundness. Merely

because defendants' powers and duties were not as extensive or as delineated in detail as those of state banking examiners does not persuade this court that defendants' supervisory function was intended to be wholly unconcerned with considerations of basic solvency and fundamental financial health. Defendants had a duty under the statute to conduct their examining and supervisory activities with an eye toward ascertaining SIBC's compliance or noncompliance with *all* statutory requirements under the Act, including the $25,000 stated capital and surplus requirement.

■ Nonetheless, this court is persuaded that defendants are correct in contending that they owed no duty to SIBC with respect to the performance of their statutory duties. In this regard, however, the court cannot overemphasize the limited scope of its holding. The precise and sole question here determined is whether the statute establishing defendants' examining and regulatory duties imposes upon defendants any duty to the institution regulated. This court finds that it does not. However, this court does not decide or address the question of whether that statute imposes a duty upon defendants to any other persons, be they stockholders, creditors, investment certificate holders, or any other individuals or entities.

On January 20, 1984, this court entered an order confirming SIBC's modified plan of reorganization. Pursuant to Article V of the Modified Plan of Reorganization, upon confirmation the so-called "Liquidation Assets" vested in the Creditors' Liquidation Trust to be held, managed, and administered by the Liquidating Trustee for the purpose of carrying out the provisions of the plan. The modified plan defined "Liquidation Assets" as "any claim based on a preferential transfer or fraudulent conveyance of property of S.I.B.C., any claim of S.I.B.C. that arose before March 10, 1983, [the date of commencement of the bankruptcy case] and approximately $26 million of commercial loans of S.I.B.C." Modified Plan of Reorganization, Article I, section 1.19. Pursuant to Article VI, the Liquidating Trustee was "deemed vested with any and all rights and powers conferred on a trustee in a case under Chapter 11 of the Bankruptcy Code in respect to the Liquidation Assets."

■ The commencement of a case under the Bankruptcy Code "creates an estate ... comprised of ... all legal or equitable interests *of the debtor* in property as of the commencement of the case." 11 U.S.C.A. § 541(a) (1979) (emphasis supplied). Clearly, under both the Bankruptcy Code and the modified plan the Liquidating Trustee has no cause of action against defendants unless SIBC itself had a cause of action against defendants.

Plaintiff has failed to state a claim upon which relief may be granted because defendants owed no duty under the statute to SIBC. *First State Bank of Hudson County v. United States,* 599 F.2d 558 (3rd. Cir.1979) (Federal Deposit Insurance Act imposed no duty on FDIC to warn bank of president's misapplication of funds discovered by FDIC in course of bank examination), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Gold v. Ernst & Ernst (In re Franklin National Bank Securities Litigation),* 445 F.Supp. 723 (E.D.N.Y.1978) (National Bank Act provision requiring regular examination of national banks does not impose on Comptroller of the Currency an actionable duty to the bank examined); *Social Security Administration Baltimore Federal Credit Union v. United States,* 138 F.Supp. 639 (D.Md.1956) (Federal Credit Union Act did not impose duty on part of government examiners to federal credit union to examine for purpose of verifying accounts or detecting embezzlement and reporting same to credit union).

To the extent that these cases hold that a statute establishing a regulatory scheme over such institutions does not establish a duty on the part of the examining officials to the *institution* regulated, this court agrees. This court is aware, of course, that unlike the statute in *First State Bank of Hudson County* the examination under the statute here cannot be said to have

been "intended primarily for the protection of the [federal] insurance fund." 599 F.2d at 563. However, the court is persuaded that the statute here, as in *Franklin National Bank*, was "intended primarily for the benefit of the public and the common weal, not for the benefit of banks."[4] 445 F.Supp. at 731. Further, as in *Social Security Administration Baltimore Federal Credit Union*, the examination under the statute here was undoubtedly intended for the purpose of ascertaining the financial condition of the institution, to determine whether the institution was operating in conformance with applicable law, and to supply the regulatory officials with information necessary to the regulatory function—not "as a service to the [institution]." 138 F.Supp. at 646.

However, for the purposes of the limited holding here this court need not, and does not, adopt or espouse the conclusions of these cases, or other cases, to any extent they may be interpreted to indicate that such statutes impose no duty to *depositors or creditors* of such institutions.[5] That issue is not before the court. Certainly, holders of SIBC investment certificates would have been at least some of the ultimate beneficiaries of this action had the plaintiff successfully pursued the matter to judgment. But holders of investment certificates did not bring this action. Plaintiff brought this action in his capacity as Liquidating Trustee exercising whatever legal rights were held in this connection by the institution Southern Industrial Banking Corporation. Defendants owed no duty to that institution with respect to the performance of their statutory duties. For that reason, and that reason alone, defendants are entitled to the granting of their motions to dismiss. This court expresses no opinion as to the rights of any other parties to proceed against defendants in another, more appropriate forum.

Defendants' motions to dismiss for failure to state a claim upon which relief can be granted should be granted. Accordingly, this court submits its recommendation to the district court that an order so providing be entered herein.

---

4. The statute applicable here provides:

   *Purpose and construction.*—(a) This chapter is adopted for the purpose of revising and restating the Industrial Loan and Thrift Companies Act to the end that the people of this state may have available the facilities and resources of regulated lending institutions to meet their needs for loans at rates and charges reasonably commensurate with economic realities.

Tenn.Code Ann. § 45–5–101(a) (1980).

5. In this connection, the court notes the holding of *Tcherepnin v. Franz,* 570 F.2d 187 (7th Cir. 1978) (statutory examining and supervisory duties owed by state director of department of finance under Illinois Savings and Loan Act extended to depositors of institution), *cert. denied,* 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978).