514 A.2d 649

A. Danielle Rousseau, Appellant *v.* City of Philadelphia, Appellee.

174

Argued June 9, 1986, before President Judge CRUMLISH, JR., Judge BARRY, and Senior Judge ROGERS, sitting as a panel of three.

*Harold R. Berk,* for appellant.

*Pamela Foa,* Deputy City Solicitor, with her, *Susan Shinkman,* for appellee.

OPINION BY JUDGE BARRY, August 29, 1986:

This appeal results from an order of the Philadelphia County Court of Common Pleas which sustained preliminary objections in the nature of a demurrer filed

by the City of Philadelphia (City), appellee, in response to the complaint in assumpsit and trespass filed against it by the appellant herein, A. Danielle Rousseau (appellant).

In 1977 the appellant applied to the city to obtain a "Section 312" loan, a form of financing available to certain homeowners in order to make repairs and improvements to eliminate housing code deficiencies. Such loans are the result of federal legislation, and the financing itself consists of federal funds; the city, however, administers the program under a cooperation agreement with the federal Department of Housing and Urban Development (HUD or federal government). Appellant's loan application under this program was approved.

Following a number of administrative and logistical miscarriages not relevant to the present controversy, a loan of $58,000 was authorized and the amount was transmitted to the city to be held in escrow in order to pay construction costs. A contractor, one Masino, began the rehabilitation work in June, 1979, but was fired by appellant in September of the same year due to her belief that an incompetent job was being performed. During this period, however, progress payments provided for under the agreement *were* made to Masino. After the dismissal, appellant incurred additional costs in correcting the improperly performed work and in completing, with a second contractor, the rehabilitation project. These costs were borne by appellant through private financing.

Appellant then filed her complaint, alleging (1) that the city breached its duty to her and thus acted negligently and in violation of contract by providing faulty construction specifications, in approving Masino as contractor, and in failing to properly inspect the latter's work in accordance with the HUD Handbook providing

for the administration of Section 312 loan projects; and (2) that the city breached its fiduciary duty to her and thus acted negligently and in violation of contract by releasing funds from escrow to Masino when the rehabilitation work had not been conducted in a workmanlike manner. Appellant also contends that the city acted negligently and in breach of contract by refusing to release funds to her after she dismissed Masino; those funds were required, according to appellant, in order for her to correct "emergency conditions" caused by the ill-performed work.

To this complaint the city filed preliminary objections, in response to the trespass counts asserting the defense of governmental immunity, and in response to the assumpsit counts denying that it had entered into any contractual relations with the appellant. These preliminary objections were sustained by the trial court, which concluded that the city was indeed immune and, further, that there was no contract between appellant and the city. The appellant then initiated the present appeal.

In reviewing an order sustaining a demurrer, this Court accepts the well-pleaded facts in the pleading under attack as true, and recognizes that a complaint should be dismissed for failing to state a cause of action only in clear cases, free of doubt and reservation. *Knudsen v. Delaware County Regional Water Quality Control Authority*, 84 Pa. Commonwealth Ct. 36, 40, 478 A.2d 533, 535-36 (1984). Appellant maintains both that the facts averred fall within the ambit of the tort immunity exceptions codified at 42 Pa. C. S. §§8541-8564, and that a contract was in fact in existence between her and the city. We disagree and hence affirm.

1. *Cause of Action Under Pa. C. S. §§8541-8564*

Appellant's argument that the city is not immune from her negligence claim is premised on the notion

that the loan proceeds, held by the city in escrow, constituted "personal property" for purposes of the Judicial Code, and that the city tortiously breached certain duties owed to her in relation thereto:

> (b) *Acts which may impose liability.* The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> . . . .
>
> (2) Care, custody or control of personal property.—The care, custody or control of personal property of others in the possession or control of the local agency. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency.

42 Pa. C. S. §8542(b)(2). The loan funds were in the possession of the city, appellant asserts, and the city may thus be liable in tort for the damages proximately resulting due to the

> breach of duties [on the part of the city] regarding the care, custody and control of the escrow funds. This would include . . . breach of fiduciary duties through negligent disbursal of the escrow funds, . . . failure to exercise due care in disbursal of escrow funds to correct emergency conditions, [and] negligent inspection of construction work leading to release of escrow funds.

*Brief for Appellant* at 22.

We reject preliminarily, however, the appellant's argument that the city, as escrow agent, owed any such duties. As the trial court concluded, "A lender owes no duty of care to his borrower and a lender's inspection of the property securing his loan is made for the lender's

benefit." *Trial Court op.* at 1 (citing *Federal Land Bank of Baltimore v. Fetner,* 269 Pa. Superior Ct. 455, 410 A.2d 344 (1979)). In the present case, of course, the city was not even the lender but was, instead, simply the lender's agent. We thus agree with the trial court that the city "owed no duty to [appellant] and could not have been in breach." *Trial Court op.* at 2.

That no duty was owed by the city is also established by recognizing that the agreement to inspect the work constituted a benefit which runs to the interest of the federal government, and not to appellant. We have articulated such recognition in part 2(a) of this opinion, wherein appellant's assumpsit claims are considered. Directly relevant in this regard with respect to appellant's tort claims, however, is *First Bank of Hudson County v. United States,* 599 F.2d 558 (3d Cir. 1979). In this case, the directors of a bank sought to establish a cause of action under the Federal Tort Claims Act against the FDIC, which, the bank alleged, owed to it a duty "to warn the directors about the [bank president's] misapplication of [bank] funds." *Id.* at 564. This duty was evidenced, according to the bank, by, among other things, the existence of the FDIC Manual of Examination Policies, under which that agency functioned and recognized its duties. Any notion of a duty running to the *bank,* however, was disavowed by the appeals court, which affirmed the granting of the agency's motion for summary judgment:

> [W]e hold that a manual setting up internal procedures and policies for insurance fund examinations does not create a right in the examined bank to require notice from the FDIC of irregular banking practice by its officials. In drafting the Manual, the FDIC may be presumed to have aimed at the achievement of the statutory objective served by bank examinations.

. . . [C]ongress intended the examinations to be a valuable means of protecting the important interests of the federal insurance fund, not a direct measure to protect the banks from the misconduct and shortcomings of their officials and employees. The Bank, therefore, cannot predicate a claim on the alleged violation of the FDIC Manual which was issued only for internal operating procedures.

*Id.* at 564. The relationship in the present case is analogous. To the extent that the city owed duties—reflected in the cooperation agreement and HUD handbook—it owed them to the federal government. *See infra* text accompanying note 2.

As we thus conclude that no duty was owed by the city, appellant's complaint did not satisfy the initial Judicial Code requirement that the alleged damages "would be recoverable under common law . . . if the injury were caused by a person not having available [an immunity defense]." 42 Pa. C. S. §8542(a)(1).

Nor, in our view, has the appellant set forth in her complaint facts sufficient to bring the alleged cause of action within the orbit of the "personal property" exception. "Personal property" is not defined in the Code, but that term has been held to encompass "everything that is the subject of ownership, not coming under the denomination of real estate." *Klingner v. Pocono International Raceway, Inc.*, 289 Pa. Superior Ct. 484, 480-91, 433 A.2d 1357, 1361 (1981). We thus do not foreclose the possibility that, under the appropriate circumstances, the negligent undertaking of a fiduciary duty on the part of a governmental agency with respect to a loan fund—clearly a *res* constituting personal property —could give rise to a cause of action in tort. Such circumstances do not exist, however, in the present controversy.

Most damning to appellant in this respect is the personal property exception itself, which provides that such property must be "in the possession or control of the local agency." 42 Pa. C. S. §8542(b)(2). While the city may have been the escrow agent with respect to the loan fund, the release of progress payments from escrow under the loan agreement was made contingent upon an ascertainment of a certain percentage of work "completed, inspected, and approved . . . as determined by [the city] and [as] concurred [in] by [the] homeowner []. . . ." We cannot hold that the fund was in the city's "possession or control" when its crucial disposition was in fact subject to appellant's approval. Appellant has thus not satisfied the strictures of the immunity exception.

2. *Cause of Action in Contract*

The trial court granted the city's preliminary objections with respect to the appellant's assumpsit counts on the grounds that there was no contract between appellant and the city. We agree with that assessment.

a. *Third-Party Beneficiary Theory*

Appellant actually avers the existence of two different contracts. First, appellant maintains that she was the *intended* third-party beneficiary of the cooperation agreement between the federal government and the city. Suggested as giving rise to such status is the following clause:

> The City of Philadelphia . . . shall, at all proper times, provide or cause to be provided competent and adequate architectural, engineering, financial and other technical supervision and inspection of rehabilitation work financed by Section 312 loans approved under this Agreement. . . . The City of Philadelphia . . . will [also] cooperate in any inspection of rehabilitation work financed by Section 312 loans approved under

this agreement, as deemed necessary by [the federal government].

*Cooperation Agreement,* Section 8. Appellant points to this clause, and to the fact that she "agreed" to the cooperation agreement in her own loan application, and concludes that it was intended for *her* benefit.[1] That is, the city was contractually bound to inspect the rehabilitation work, and its failure to effectively do so—which she claims led to disbursal of her loan funds and consequent damages—constitutes a breach of contract for which she may sue. *Brief for Appellant* at 29.

We find no merit in this assertion. The "benefit" received by appellant in the subject transaction was the grant of the loan itself, in return for which appellant incurred the "detriment" of having to repay the principal along with a certain stated percentage of interest. The duties undertaken by the city under the cooperation agreement, meanwhile, stem, as an inspection of the agreement in context bears out, solely from its role as the administering agent of the loan program for the federal government. The "benefit" derived from the fulfillment of such duties under the agreement is properly ascribed to the federal government, which is assured through such fulfillment of responsible disposition of the loan proceeds, in vindication of the statutory authorization pursuant to which the loan program was initially established.[2]

As this essential character of the agreement *speaks* to the parties' intent, appellant was clearly not an intended third-party beneficiary, as she alleges, and was thus not a party entitled to recovery for alleged breach

---

[1] In this respect appellant also points to the existence of the HUD handbook which refines the nature of the city's duties under the agreement.

[2] See the discussion of *First State Bank of Hudson County v. United States,* 599 F.2d 558 (3d Cir. 1979), in part 1 of this opinion.

of the agreement. *See Guy v. Liederbach*, 501 Pa. 47, 60, 459 A.2d 744, 751 (1983) (providing definition of intended third-party beneficiary).

### b. *Direct Contractual Relationship Theory*

Appellant also argues that a direct contractual relationship existed between her and the city:

> [T]he City contracted to serve as the escrow agent of the Homeowner for purposes of inspection of work in progress and disbursal of construction funds. . . . Though there is an agreement between the City and the [federal government] for administration of the Section 312 loan program . . . *the City has here assumed independent duties to the Homeowner supported by consideration. . . .*

*Brief for Appellant* at 25 (emphasis added). The consideration, appellant alleges, is "the benefit conferred upon the City by the homeowner agreeing to rehabilitate her property . . . and ceding of power to the City to assert any right to remedies for breach by the contractor." *Id.* at 25. This contention was the subject of a terse, explicit rejection by the trial court. We join in that response.

The fallacy underlying appellant's argument originates in the same misconception with respect to the character of the cooperation agreement. This city's duty to inspect stemmed from an agreement between the city and the federal government, a pact to which the appellant was *not* a party. It is not to be denied that a certain benefit accrues to the city through its residents' participation in the section 312 loan program. Still, that general benefit—a more attractive and healthy urban environment—cannot, simply and patently, be construed as having been bestowed upon the city *by its residents* in exchange for the undertaking of managerial/fiduciary duties on the party of the city under the loan program. Rather, we agree with the city that the source

of precisely such benefit is "the federal government [which] funds the program . . . in return for which the City agree[s] to administer [the] §312 program." *Brief for Appellee* at 13.

We are likewise unimpressed with the notion that consideration from appellant may be discerned in the "ceding of power" to the city to assert remedies against a breaching contractor. The agreement entered into between appellant and Masino clearly contemplates that appellant *could* sue the contractor; and, indeed, appellant informs us in her brief that she was "successful in an arbitration proceeding [against Masino]," though the latter was thereafter discharged in bankruptcy. *Brief for Appellant* at 10.

3. *Conclusion*

The trial court correctly concluded that the complaint failed to state a cause of action either in trespass or assumpsit. Accordingly, the order dismissing the complaint is affirmed.

ORDER

NOW, August 29th, 1986, the order of the Court of Common Pleas of Philadelphia County, Civil Trial Division, September Term, 1981, No. 838, filed November 26, 1984, is hereby affirmed.