**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Penn Square Bank, N.A., Plaintiff,**

v.

**Bill P. JENNINGS; Eldon L. Beller; William G. Patterson; John R. Preston; Carl W. Swan; and C.F. Kimberling, Sr., Defendants,**

**and**

**Peat Marwick Mitchell & Co., a partnership, Additional Party-Defendant.**

**No. CIV–84–1612–W.**

United States District Court, W.D. Oklahoma.

Aug. 15, 1985.

sergeant).

Richard B. Noulles, Charles C. Baker, David L. Bryant, Gable & Gotwals, Tulsa, Okl., Ted N. Pool, Sherman, Pool, Thompson & Coldiron, Del City, Okl., for plaintiff.

Charles C. Green and Robert Turner, Turner, Turner, Green & Braun, Oklahoma City, Okl., for Jennings.

Richard Talley and L. Keye Farrar, Norman, Okl., for Beller.

Burck Bailey, Warren F. Bickford, IV, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for Patterson.

John Goodman, Oklahoma City, Okl., for Preston.

John W. Vardaman, Jr., Washington, D.C., Peter B. Bradford, Bradford, Haswell & Jones, Oklahoma City, Okl., for Swan.

John E. Green, Asst. U.S. Atty., Oklahoma City, Okl., for the U.S.

Ross Arbiter, Stanley W. Levy, Weinberg, Zipser, Arbiter & Heller, Los Angeles, Cal., Erwin E. Adler, Carol Lynch, Richards, Watson, Dreyfuss & Gershon, Los Angeles, Cal., Gene A. Castleberry, Robert A. Wiener, Oklahoma City, Okl., for Professional Asset Management, Inc.

Gary A. Bryant, G. Blaine Schwabe, III, Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., Larry K. Griffis, Butzell, Keidan, Simon, Myers & Graham, Detroit, Mich., for Michigan Nat. Bank, N.A.

J. William Conger, James C. Prince, Hartzog, Conger & Cason, Earl D. Mills, Mills, Whitten, Mills & Mills, Oklahoma City, Okl., Edwin D. Scott, Peat, Marwick, Mitchell & Co., New York City, William E. Hegarty, Mathias E. Mone, Dean Ringer, Cahill, Gordon & Reindel, New York City, for Peat, Marwick, Mitchell & Co.

David T. Hedges, Jr., Vinson & Elkins, Houston, Tex., James E. Work, Shirk, Work, Robinson & Williams, Oklahoma City, Okl., for Coe, Cook, Haugland, Richardson, Smelser, Kenworthy, Randolph and Ross.

James A. Kirk, Kirk & Chaney, Oklahoma City, Okl., for Stubbs.

Robert C. Margo, Oklahoma City, Okl., for Marvin K. Margo, M.D.

Harold M. Durall, Oklahoma City, Okl., for Murphy.

K. Phillip Knierim, Mark S. Simonian, Wood, Lucksinger & Epstein, Los Angeles, Cal., Joan M. Bernott, Special Litigation Counsel, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for James and Roe.

James W. Bill Berry, Oklahoma City, Okl., Wilmer Cutler Pickering, Washington, D.C., for Burks.

Phillip F. Horning, Horning, Johnson & Grove, Judson M. Fink, Oklahoma City, Okl., for Dunn.

## ORDER

LEE R. WEST, District Judge.

### Background

The Federal Deposit Insurance Corporation, as Receiver for Penn Square Bank, on behalf of the Bank's depositors and shareholders, has filed suit against the Bank's officers, directors and independent auditors. As to the auditors, Peat, Marwick, Mitchell & Co. ("Peat"), the Receiver alleged negligence, malpractice, and breach of common law duties and professional standards. Peat responded by filing a third-party action against the FDIC, in its corporate capacity, and the Office of the Comptroller of Currency ("OCC"), alleging that the Comptroller's examination and declaration of the Bank's insolvency, and the FDIC's determination to liquidate the Bank, constituted common law negligence, breach of statutory duties to depositors and creditors, and concurrent liability for

any damages recovered from Peat. Presently before the Court is the motion of the United States, on behalf of OCC and FDIC as third party defendants, to dismiss Peat's counterclaim and third party action.

## DISCUSSION

The Federal Tort Claims Act is a limited waiver of sovereign immunity allowing certain enumerated kinds of lawsuits to proceed against the government. 28 U.S.C. § 1346(b). The Act contains express exceptions for suits which remain barred by sovereign immunity. The exceptions include:

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused;"

and

"(h) Any claim arising out of misrepresentation ..." 28 U.S.C. § 2680(a), (h).

The Act's legislative history indicates that Congress did not intend to create liability for errors by government agencies or officials in administration, policy judgments or exercise of "discretionary functions". *Dalehite v. United States*, 346 U.S. 15, 33–37, 73 S.Ct. 956, 966–69, 97 L.Ed. 1427 (1953); *Emch v. United States*, 630 F.2d 523 (7th Cir.1980). The Court finds that Peat's third-party claims fall within the "discretionary function" exceptions to the Tort Claims Act. The Court also finds that Peat's claims in Counts I and II of its third-party complaint are premised on concepts of governmental duty that case law does not recognize. Accordingly, for the reasons explained below, Peat's third party complaint is dismissed.

### Liquidation and Receivership

### Counts III and IV

Peat critizes the FDIC for "refusing" to arrange a purchase and assumption of Penn Square and for failing to devise other means of financially assisting the Bank and protecting its depositors. Peat alleges that the FDIC's decision to liquidate the Bank, rather than attempt to "revive" it, was a concurrent cause of the Bank's losses for which Peat is being sued. (Although Peat has targeted the FDIC as the defendant on these counts, presumably because of the Corporation's authority to arrange emergency loans and "purchase and assumption" transactions (12 U.S.C. § 1823(c), (e), the Comptroller of the Currency, who is empowered to declare a national bank insolvent and appoint a receiver (12 U.S.C. § 192, 1821(c)) seemingly would also be involved.)

It is evident that the decisions of whether and how to intervene in failing banks is discretionary with the FDIC. 12 U.S.C. § 1823 provides that:

"(c) The Corporation is authorized, in its sole discretion and upon such terms and conditions as the Board of Directors may prescribe, to make loans to, to make deposits in, to purchase the assets or securities of, to assume the liabilities of, or to make contributions to, any insured bank—

(A) if such action is taken to prevent the closing of such insured bank;

(B) if, with respect to a closed insured bank, such action is taken to restore such closed insured bank to normal operation; or

(C) if, when severe financial conditions exist which threaten the stability of a significant number of insured banks or of insured banks possessing significant financial resources, such action is taken in order to lessen the risk to the Corporation posed by such insured bank under such threat of instability.

(2)(A) In order to facilitate a merger or consolidation of an insured bank described in subparagraph (B) with an insured institution or the sale of assets of such insured bank and the assumption of such insured bank's liabilities by an insured institution, or the acquisition of the

stock of such insured bank, the Corporation is authorized, in its sole discretion and upon such terms and conditions as the Board of Directors may prescribe—

(i) to purchase any such assets or assume any such liabilities;

(ii) to make loans or contributions to, or deposits in, or purchase the securities of, such insured institution or the company which controls or will acquire control of such insured institution;

(iii) to guarantee such insured institution or the company which controls or will acquire control of such insured institution against the loss by reason of such insured instution's merging or consolidating with or assuming the liabilities and purchasing the assets of such insured bank or by reason of such company acquiring control of such insured bank; or

(iv) to take any combination of the actions referred to in subparagraphs (i) through (iii)."

Similarly, the FDIC can issue cease and desist orders if, in its "opinion", the Bank is engaging in unsafe and unsound practices. 12 U.S.C. § 1818(b)(1). This determination is also a matter of agency discretion. *Davis v. Federal Deposit Insurance Corporation,* 369 F.Supp. 277 (D.Colo.1974).

Just as the Comptroller and FDIC have been attacked for not giving adequate assistance to some banks, they have been critized for giving too much to others. In the Franklin National Bank situation, "rescue attempts" through emergency reserve infusions and merger efforts were unsuccessful. Appellants in *Huntington Towers Ltd. v. Franklin National Bank,* 559 F.2d 863 (2d Cir.1977), argued that the Comptroller's rescue attempts were "in effect throwing good money after bad (and) should not have been made," but the Second Circuit held that such claims based on the Comptroller's decision and manner of intervention were barred. Observing that under the Federal Reserve Act the Comptroller "may" appoint a Receiver "whenever ... he shall become satisfied of the insolvency of a national banking association," the Court noted that "needless to say, the powers of determining the point at which a bank is no longer able to meet its obligations as they fall due involves a substantial amount of discretion", 559 F.2d at 870. *Accord, Matter of American City Bank & Trust Co.,* 402 F.Supp. 1229, 1231 (D.Wis.1975) (Comptroller's discretion in insolvency determinations). As explained by the Second Circuit:

"Both the fixing of the date of declaration of insolvency by the Comptroller and the granting of rescue funds to FNB (Franklin) by the Federal Reserve Board were exercises of judgment by the public officials concerned and were well within their competence and authority. Absent clear evidence of grossly arbitrary or capricious action on the part of either or both of them ... it is not for the courts to say whether or not the actions taken were justified in the public interest, particularly where it vitally concerned the operation and stability of the nation's banking system." *Huntington Towers,* 559 F.2d at 868.

The FDIC's discretion in electing between liquidation of an insolvent bank and executing a purchase and assumption agreement is manifest in the Federal Reserve Act, 12 U.S.C. § 1823(c). While some courts have identified policy advantages from purchase and assumption transactions rather than liquidations (*Gunter v. Hutcheson,* 492 F.Supp. 546 (N.D.Ga.1980) aff'd 674 F.2d 862, 865–66 (11th Cir.1982)), none have declared the FDIC liable for choosing one course of action over another. *Washington Federal Savings & Loan Asso. v. Federal Home Loan Bank Bd.,* 526 F.Supp. 343, 401–02 (N.D.Ohio 1981). In fact, analogous claims of wrongful liquidations and receiverships of savings and loan associations have been rejected, based on the discretionary function exception. *First Federal Savings and Loan Assn.,* 531 F.Supp. 251, 254–55 (D.Hawaii 1981), *Newberg v. Federal Savings and Loan Insurance Corp.,* 317 F.Supp. 1104 (N.D. Ill.1970).

As the Supreme Court explained in *Dalehite v. United States:*

"the 'discretion' protected by (the Tort Claims exception) . . . is the discretion of the executive or administrator to act according to one's judgment of the best course . . . It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision, there is room for discretion." 346 U.S. at 34–36, 73 S.Ct. at 967–968.

The decision to liquidate Penn Square may have been unpopular; but in any event it was a discretionary governmental function within the meaning of § 2680(a). Accordingly, the government's liability is barred by the Act as to Counts III and IV and they are dismissed.

### Bank Examination

### Counts I and II

 Peat complains that the Comptroller's examinations and reports of the Bank's financial situation were negligent and misleading; that Peat based its audit on the Comptroller's misinformation; and therefore that the Comptroller is liable to Peat, either for the damages which Peat may be found owing to the Bank's shareholders or for Peat's costs of defense (if the Receiver's suit is unsuccessful). Without regard to Peat's rather tenuous theory of causation, we find that these counts do not state a claim for relief.

The FDIC, in exercising it's statutory mission to administer the federal deposit insurance fund, is authorized to appoint and assign bank examiners who "shall have (the) power to make a special examination of any . . . national bank . . . whenever in the judgment of the (FDIC's) Board of Directors such special examination is necessary to determine the condition of any such bank for insurance purposes." 12 U.S.C. § 1820(b). The Comptroller reports the examiners' findings to the examined bank. Peat claims that the Comptroller expected Penn Square's directors to publicize the reports to Peat and knew, or should have known, that Peat would rely upon them.

Federal regulations concerning the Comptroller's reports state that:

"The Comptroller of the Currency makes available to each national bank and, in some cases to holding companies thereof, a copy of the report of examination of such bank or company. The report of examination is the property of the Comptroller and is loaned to the bank or holding company for its confidential use only. Under no circumstances shall the bank or holding company or any director, officer or employee thereof make public or disclose in any manner the report of examination or any portion of the contents thereof to any person or organization not officially connected with the bank as officer, director, employee, attorney, auditor or independent auditor. Any other disclosure or use of this report except as expressly permitted by the Comptroller of the Currency may be subject to the penalties provided in 18 U.S.C. § 641." 12 CFR § 4.19(c).

Presumably, Peat is claiming "independent auditor" status entitling it to receive the Comptroller's reports on Penn Square. It is one thing to receive reports, however, and quite another to rely on them. In essence, Peat is claiming that its license for receipt was an excuse for reliance. FDIC counters that Peat had a professional duty to conduct its audit without relying on the Comptroller's findings.

Regardless of the arguable aspect of causation and reliance, Peat's theory of liability vis-a-vis the government is defective because it is premised on a non-existent duty. The FDIC and the Comptroller, in their governmental functions, had no obligation to Peat, the Bank's privately retained auditors. Indeed, some courts have found that the FDIC, in examining a bank, has no duty to the Bank's directors or holding company (*In re Southern Industrial Banking Corp. v. Tennessee*, 49 B.R. 811 (Bkry.E.D.Tenn.1985); *Emch v. U.S.*, *supra*), and some courts have held that the agency's allegiance is owed solely to maintaining the fiscal integrity of its deposit insurance fund. *In re: Franklin Nation-*

al Bank Securities Litigation, 445 F.Supp. 723, 730–31 (E.D.N.Y.1978); supp. op. 449 F.Supp. 574 (E.D.N.Y.1978); First State Bank of Hudson Co. v. U.S., 599 F.2d 558 (3d Cir.1979).

As articulated by the Third Circuit,

"The purpose of the bank examinations by the FDIC under 12 U.S.C. § 1820(b) is to prevent losses that would result in claims against the insurance fund. Nothing in the Act purports to establish any duty requiring that the FDIC warn banks of irregularities perpetrated by their officials. When the FDIC carried out its responsibilities under the Act by examining the Bank, its purpose was to safeguard this system of insurance ... The FDIC was not acting for the benefit of the Bank or even of the Bank's depositors and other creditors. If bank examinations by the FDIC reveal any irregularities or fraud, such examinations, though they may inure incidentally to the benefit of a bank, are intended primarily for the protection of the insurance fund." First State Bank of Hudson Co., 599 F.2d at 563, see also 565.

In Emch v. United States, the plaintiff was a stockowner in the holding company of an insolvent national bank. He sued the Comptroller and the FDIC, claiming that bank examinations had been performed negligently and that as a result of the examiners' failure to take proper and adequate measures to correct the bank's deficiencies, the value of holding company's stock became worthless. Finding that "the essence of the claims is the allegation of negligent performance of regulatory and statutory supervision or monitoring of the bank entities," the Seventh Circuit held that such claims "cannot be sustained in light of the provisions of section 2680(a)." 630 F.2d at 528. The Circuit also held that:

"Attempt(s) to saddle the government with liability on the basis of its failure, in the course of statutory regulatory activities, to anticipate the financial difficulties of (the) Bank, to insure the honesty and competency of its officers, and to successfully prevent the losses to (the

Bank's) shareholders" were "claims of the type which sec. 2680(a) was designed to preclude." 630 F.2d at 528–29.

Peat's case against the government falters on its threshold assumption that the Comptroller's and FDIC's statutory duties embrace common law tort concepts of foreseeable reliance by third parties, i.e. bank auditors. This theory is defective for two reasons: first, as discussed above, 28 U.S.C. § 2680(a) and (h) supplant common law tort theories by expressly negating the government's liability for discretionary functions or misrepresentations. Second, the statutory scheme for deposit insurance and bank examinations does not create a governmental duty to a national bank's independent auditors. Conceptually, these two reasons are different: one goes to the absence of duty while the other goes to a bar against recovery. In this case, however, their impact is the same: assuming, arguendo, that Peat in fact relied on the Comptroller's reports and examinations, this reliance was misplaced and did not give rise to compensable injuries.

Peat stands in the same shoes as the rest of the general public, which has no basis in law to recover against the FDIC or Comptroller for failing to publicly disclose a bank's deteriorating financial condition. Davis v. Federal Deposit Insurance Corp., 369 F.Supp. 277, 280 (D.Colo.1974). Since there was no duty of disclosure to Peat or to the public and since recovery against the government is barred in any event, supra, the third party claims in Counts I and II are not actionable. Davis v. Federal Deposit Insurance Corp.

## CONCLUSION

The government's motion is granted and the third party action by Peat, Marwick, Mitchell & Co. against the United States is dismissed.

The United States' motion for a protective order is hereby rendered MOOT. If Peat, Marwick, Mitchell & Co. intend to pursue the documents previously requested from the United States, they must do so by

subpoena prior to the discovery cut-off date of September 1, 1985.