**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Perry CARTER, et al., Defendants.**

**No. CV 86–2557 MRP.**

United States District Court, C.D. California.

July 28, 1987.

Tuttle & Taylor by Miles Ruthberg, Los Angeles, Cal., Julie Blackshaw, Los Angeles, Cal., and Dina Biblin, Asst. U.S. Atty., Washington, D.C., for plaintiff Federal Deposit Ins. Corp.

Sheppard, Mullin, Richter & Hampton by Alfred C. Yen, Los Angeles, Cal., for defendant Perry Carter.

Rosen, Wachtell & Gilbert by John Longerbone and Carol L. Newman, Los Angeles, Cal., for defendants Carpenter and Olson.

Slaff, Mosk & Rudman by Norman G. Rudman, Los Angeles, Cal., for defendant Parsons.

Alfonso, Klonsky, Sternberg & Margulies by Elizabeth Reinhart, Woodland Hills, Cal., for defendant Girdlestone.

Hurwitz, Remer & DiVincenzo by Joseph P. DiVincenzo, Corona del Mar, Cal., for defendant Ferrell.

Pizer & Michaelson by Bradley Pizer, Santa Ana, Cal., for defendant Cleveland.

## AMENDED OPINION

PFAELZER, District Judge.

This Court heard oral argument on March 9, 1987, on plaintiff Federal Deposit Insurance Corporation's ("FDIC") motion

to reconsider the Court's order filed December 19, 1986. Because the Court concludes that the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (1965, 1976, and 1986 Supp.) ("FTCA") does not bar compulsory counterclaims for recoupment against a federal agency such as the FDIC, and because the "discretionary function" exemption of the FTCA, 28 U.S.C. § 2680(a) (1965), immunizes a federal agency from liability for certain policy decisions, the FDIC's motion to dismiss counterclaims and strike affirmative defenses is granted in part and denied in part.

## I. Background

This case arises out of the collapse of the Garden Grove Community Bank ("Garden Grove") in June, 1984. On June 1, 1984, the California Superintendant of Banks, pursuant to Cal. Fin.Code § 3100 et seq. (West 1981 and 1986 Supp.), determined that Garden Grove was insolvent and should be liquidated. On that date, the Superintendant appointed the FDIC as receiver of Garden Grove. On the same date, the FDIC in its receivership capacity sold some of the least salable assets of Garden Grove to the FDIC in its corporate capacity. With this $25 million infusion of capital, the FDIC in its receivership capacity was able on the same day to sell the remainder of the assets of Garden Grove to an assuming bank.[1] The FDIC in its corporate capacity retains certain of the assets of Garden Grove, including some allegedly bad loans made by Garden Grove and the right to bring this suit against the former officers and directors of Garden Grove.

1. *Gunter v. Hutcheson*, 674 F.2d 862, 865–66 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), gives a detailed explanation of an FDIC purchase and assumption transaction concerning an insolvent bank. *Gunter*, which involved a transaction similar to the one in this case, explains the reasons for entering into such a transaction, and explains the duties of the various parties to the transaction.

2. The affirmative defenses at issue are: Carpenter 5 and 6; Carter 3, 5, and 7; Ferrell 10, 11, 12, and 13; Girdlestone 2; Parsons 4, 5, and 7; and Olson 5 and 6. They may be classed into about five groups: Estoppel, Waiver, Ratification, Delay and Inaction by the FDIC, and Duty to Examine on the part of the FDIC. The

The FDIC brought this suit on April 22, 1986. The FDIC alleges that the defendants, the directors and officers of Garden Grove, were negligent in their operation of the bank, breached their fiduciary duty to the bank, and breached contracts with the bank. The FDIC filed a motion on October 21, 1986 to dismiss the counterclaims of defendants Jack Carpenter ("Carpenter") and Don Olson ("Olson") and to strike certain affirmative defenses of defendants Carpenter, Olson, Perry Carter, Victor Ferrell, Alan Girdlestone, and Lindsley Parsons.[2] This Court has jurisdiction under 12 U.S.C. § 1819 (1980).

## II. The Recoupment Counterclaims

Defendants Carpenter and Olson are represented by the same law firm, and have filed identical counterclaims, which they label as being "For Declaratory Relief/Recoupment." In substance, these counterclaims allege that the FDIC's losses from the collapse of Garden Grove were the fault of the FDIC, not defendants. Aside from attorneys' fees and costs, the counterclaims only seek a set-off against the FDIC's recovery in the case; the counterclaims do not involve additional recovery to be satisfied out of the general funds of the U.S. Treasury. In essence, these counterclaims raise the same issues as an affirmative defense of contributory negligence.

The FDIC primarily relies on the FTCA for its argument that tort-law counterclaims against it are absolutely barred.[3]

answer of defendants Gerald Buttaccio and Don Stockdale was filed after the FDIC's motion to dismiss and to strike, and is not now at issue.

3. As discussed below, the Court dismisses for failure to state a claim much of Carpenter's and Olson's counterclaim, and that part which remains duplicates the affirmative defenses raised by other defendants. The FDIC argues that this result is cumbersome, because the FDIC hires outside counsel to bring suits on its behalf and to oppose affirmative defenses, but counsel from the Department of Justice oppose counterclaims on its behalf. Allowing the counterclaim to proceed, argues the FDIC, unnecessarily requires the presence of another attorney in this lawsuit. This matter of litigation management

As a general rule, tort claims against the FDIC are subject to the FTCA. *Safeway Portland Employees' Federal Credit Union v. FDIC*, 506 F.2d 1213, 1215 (9th Cir. 1974). However, the courts are virtually unanimous that certain procedural requirements of the FTCA do not apply to a compulsory counterclaim for recoupment, in a suit where the FDIC (or any other government agency) is the original plaintiff. *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir.1967); *FDIC v. Lattimore Land Corp.*, 656 F.2d 139, 143 (5th Cir. 1981); *FSLIC v. Williams*, 599 F.Supp. 1184, 1209 (D.Md.1984); *FDIC v. Imperial Bank*, CV 85–3250–HLH (C.D. Cal. Mar. 19, 1986); *FSLIC v. Huang*, CV 85–8305–LTL (C.D. Cal. Oct. 8, 1986).[4]

Indeed, the FTCA specifically exempts counterclaims from its exhaustion of administrative remedies requirement. 28 U.S.C. § 2675(a) (1986 Supp.); *see Spawr v. United States*, 796 F.2d 279, 281 (9th Cir. 1986). Further, a defensive counterclaim for recoupment, which does not exceed the value of the FDIC's claim against the counterclaimant, need not name the United States as a party, as required by 28 U.S.C. § 2679(a) (1965 and 1986 Supp.).[5]

Several courts have grappled with the government's contention that the FTCA is the sole waiver of the government's sovereign immunity, and that even compulsory counterclaims are subject to the FTCA. Some of these courts have held that it is "the institution of the particular action," and not the FTCA, which provides the waiver of sovereign immunity as to the particular set of facts. *Frederick*, 386 F.2d at 488; *see also, Morrison–Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209,

1222–23 (9th Cir.1987) (FSLIC's waiver of sovereign immunity implied from statutory authority to "sue and be sued"). It is perhaps more accurate to say that the institution of the action waives the *procedural* requirements of the FTCA. Since the defendants' recovery, if any, on the counterclaim will come out of the FDIC's recovery from the defendants, and not from the U.S. Treasury, the policy considerations which have led to limitations on the right to name the United States as a party in a lawsuit are not implicated in a compulsory counterclaim. Since the interest in administrative settlements behind the administrative remedies requirement is not present when an agency of the government affirmatively brings a suit, *Frederick*, 386 F.2d at 489, this requirement as well is waived as to a compulsory counterclaim. However, the waiver of sovereign immunity implied from the FDIC's decision to bring this suit should not be understood as a waiver of the substantive, non-procedural exclusions from liability contained in the FTCA. (See section III, infra.)

It is clear that the recoupment counterclaims made by defendants Carpenter and Olson in this case are compulsory under Fed.R.Civ.P. 13(a) (1986). Rule 13(a) requires that a counterclaim be brought if "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." The Ninth Circuit broadly construes the terms "transaction or occurrence" in Rule 13(a). *Albright v. Gates*, 362 F.2d 928, 929 (9th Cir.1966). *Williams*, 599 F.Supp. at 1210, holds that the relevant "transaction or occurrence" in a bank failure case is the bank's "move-

is in the control of the government, not this Court, and cannot affect the substantive rights of the defendants.

**4.** For this reason, the cases cited by the FDIC in which it was the defendant, and in which the courts applied all of the procedural requirements of the FTCA, are inapposite. *See, e.g., Safeway Portland*, 506 F.2d at 1214; *Sarraga v. Girod Vela & Co., Inc.*, 649 F.Supp. 11, 13 (D.P.R., 1986).

**5.** This is the necessary implication of *Lattimore Land*, 656 F.2d at 143, and *Williams*, 599 F.Supp. at 1209. *See also Imperial Bank, supra,*

slip op. at 2 (recoupment claim "may be asserted against the agency itself"). The cases cited by the FDIC are not to the contrary. *FDIC v. Glickman*, 450 F.2d 416 (9th Cir.1971), did not involve a counterclaim at all, but rather the identity of parties for the purposes of evidence law. *Hughes v. United States*, 701 F.2d 56 (7th Cir.1982), involved not a counterclaim, but an affirmative suit against the government. *FDIC v. Blackburn*, 109 F.R.D. 66, 75 n. 2 (E.D. Tenn. 1985), recognized that a proper recoupment counterclaim *could* be brought directly against a government agency.

ment towards insolvency." Using this standard, both the acts of the FDIC and those of the directors and officers of Garden Grove which contributed to the bank's insolvency are part of the same transaction or occurrence under Rule 13(a). Permissive counterclaims involving unrelated transactions under Fed.R.Civ.P. 13(b) (1986) may not create procedural waivers of the FTCA. *FDIC v. Citizens Bank & Trust Co.,* 592 F.2d 364, 365 (7th Cir.), *cert. denied,* 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed. 2d 37 (1979) (distinguishing permissive from compulsory counterclaims). However, the recoupment counterclaims in this case are compulsory, and therefore cannot be dismissed for failure to comply with the procedural requirements of the FTCA.[6]

### III. *The Discretionary Function Exception and the Duty of the FDIC*

The FDIC also urges two related arguments in support of its contention that both the counterclaims and the affirmative defenses should be dismissed. First, the FDIC argues that examining banks is a "discretionary function," and cannot give rise to liability under the FTCA. 28 U.S.C. § 2680(a). Second, the FDIC argues that under 12 U.S.C. § 1820(b) (1986 Supp.), its duty when examining banks is only to protect its insurance fund. Since it has no duty to warn bank officers or directors about any irregularities it finds, it cannot

be liable for any breach of duty. In fact, these arguments produce the same result.

A number of courts have considered whether the discretionary function exception of 28 U.S.C. § 2680(a) even applies to a suit like this. Some courts have held that a compulsory counterclaim for recoupment is not subject to § 2680(a), on the theory that the government's waiver of sovereign immunity comes not from the FTCA, but from the government's decision to initiate the lawsuit. *See, e.g., Morrison–Knudsen,* 811 F.2d at 1223; *Williams,* 599 F.Supp. at 1209; *Huang, supra,* slip op. at 4; *Imperial Bank, supra,* slip op. at 2; *but see FDIC v. Jennings,* 615 F.Supp. 465, 467 (W.D. Okla.1985) (FTCA exemptions do apply).

■ The better view is that the substantive portions of the FTCA which relate to the determination of liability do apply both to affirmative suits brought against the government and to counterclaims and affirmative defenses in suits brought originally by the government. To grant a litigant additional substantive rights against the government as a defendant over those rights the litigant would have as a plaintiff would result in an unacceptable anomaly. *Chemehuevi Indian Tribe v. California State Board of Equalization,* 757 F.2d 1047, 1053 (9th Cir.), *rev'd on other grounds,* 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985).[7] Moreover, there is nothing in the FTCA to support the conclusion that its substantive provisions do not apply to counterclaims and affirmative defenses.[8]

---

6. *FDIC v. Shinnick,* 635 F.Supp. 983 (D.Minn. 1986), does not support the FDIC's contention that tort counterclaims against it are absolutely barred by the FTCA. *Shinnick* merely held that the tort counterclaims in that suit did not "seek relief of the same kind or nature" as the contract claims originally brought by the FDIC, and thus were not properly considered recoupment counterclaims. *Id.* at 985. *Shinnick* did allow contract counterclaims for recoupment. *Id.* at 986. *See also, Citizens Bank & Trust Co.,* 592 F.2d at 373. Neither do *United States v. Lockheed L–188 Aircraft,* 656 F.2d 390 (9th Cir.1979), or *United States v. Longo,* 464 F.2d 913 (8th Cir.1972), support the FDIC's "no tort counterclaims" position. Both of these cases held that the specific tort counterclaims at issue did not state a claim for which relief could be granted. *Lockheed,* 656 F.2d at 397; *Longo,* 464 F.2d at 915. *Longo* specifically recognized that the government, by initiating the suit, *does* waive

sovereign immunity as to "any appropriate defense to its action." *Id.* See section III, *infra.*

7. The portions of *Chemehuevi* which were not reversed by the Supreme Court are still the law of the Ninth Circuit, and are binding on this Court. *Squaxin Island Tribe v. State of Washington,* 781 F.2d 715, 723 (9th Cir.1986).

8. 28 U.S.C. § 2675(a), as discussed above, waives some of the procedural requirements of the FTCA for counterclaims, but it does not change the government's substantive liability on those counterclaims. *Morrison–Knudsen,* 811 F.2d at 1213, involved a receiver's ability to adjudicate claims made against a financial institution for the institution's pre-receivership activities. While this case definitively holds that a government agency such as the FDIC waives its sovereign immunity when it institutes a suit, it does not discuss the effect of the FTCA on the

Fed.R.Civ.P. 13(d) (1986) specifically states that a party does not have greater rights against the United States by counterclaim than the party would have by bringing an affirmative suit. The Rules Enabling Act, 28 U.S.C. § 2072 (1982), which states that the Federal Rules of Civil Procedure "shall not abridge, enlarge, or modify any substantive right" is to the same effect. There can be little doubt that the discretionary function exception of 28 U.S.C. § 2680(a) is a substantive direction from Congress that certain decisions cannot be the basis for imposing liability on the government. This Court therefore holds that the procedural posture of a tort claim cannot change the substantive liability of the government on that claim.

In fact, the courts that have held that the discretionary function exception to the FTCA does not apply to counterclaims have gone on to apply a duty analysis which produces a result identical to that produced by the discretionary function exception. *See, e.g., Williams*, 599 F.Supp. at 1204–08; *Huang, supra*, slip. op. at 4–5. The leading cases on the duty which the FDIC owes to a bank are *In re Franklin National Bank Securities Litigation*, 445 F.Supp. 723 (E.D.N.Y.1978) (*Franklin I*), and *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 210 (E.D.N.Y.1979) (*Franklin II*). The *Franklin* cases recognized that in the ordinary course of regulation, the FDIC owes no duty to a bank or its officers and directors. However, if the FDIC goes beyond its normal regulatory activities and substitutes its decisions for those of the bank officials, the FDIC may

assume a duty. *Franklin I*, 445 F.Supp. at 733–34. Significantly, the *Franklin* court relied primarily on *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); and *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed. 2d 292 (1967), the trilogy of cases which define the discretionary function exception discussed above. The cases which analyze the FDIC's liability in terms of the discretionary function exception and those which analyze the issue in terms of duty can be viewed as substantially interchangeable.

The discretionary function cases distinguish between decisions grounded in social, economic, and political policy, and those which involve routine ministerial tasks of government. Thus, the government cannot be sued for failing to build a lighthouse at a specific location, but it can be sued for operating a lighthouse negligently, once it is built. *Indian Towing*, 350 U.S. at 69, 76 S.Ct. at 126. In the banking context, the FDIC cannot be held liable for failing to warn bank officers and directors about misfeasance it discovers during a routine inspection.[9] *First State Bank of Hudson County v. United States*, 599 F.2d 558, 365 (3d Cir.1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Emch v. United States*, 630 F.2d 523, 527–28 (7th Cir.1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981). *Cf. Harmsen v. Smith*, 586 F.2d 156, 157 (9th Cir.1978) (no duty to warn shareholders).[10]

receiver's liability for its own actions during or before the receivership.

**9.** *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 820, 104 S.Ct. 2755, 2767, 81 L.Ed.2d 660 (1984) (airline inspections) and *Cunningham v. United States*, 786 F.2d 1445, 1447 (9th Cir.1986) (OSHA inspections), reinforce the conclusion that the government is immune from tort liability for inspections which it conducts negligently. Deciding the extent to which a government agency will supervise the private individuals which it may inspect "is discretionary regulatory authority of the most basic kind," *Varig Airlines*, 467 U.S. at 819–20, 104 S.Ct. at 2767–68, and government inspections are therefore with-

in the discretionary function exemption of the FTCA. The FDIC is correct that the Ninth Circuit has retreated from the "operational/planning" distinction in discretionary function cases since *Varig Airlines. See, e.g., Begay v. United States*, 768 F.2d 1059, 1062–63 n. 2 (9th Cir. 1985). However, the net effect of the *Varig Airlines* line of cases has not been a wholesale expansion of the discretionary function exception as the FDIC would have it, but merely the inclusion of inspections on the policy side of the discretionary function line.

**10.** Defendant Girdlestone's contentions that the FDIC did have a duty to the stockholders or the depositors, and that he can claim because of that duty, fail after *Harmsen. See also, Davis v.*

Further, the decision to impose a conservatorship or a receivership on a troubled bank is within the discretion of the bank regulators. *FDIC v. Jennings*, 615 F.Supp. 465, 468 (W.D.Okla.1985); *Colony First Federal Savings and Loan Assn. v. FSLIC*, 643 F.Supp. 410, 417 (C.D.Cal. 1986).

However, the emerging consensus is that most of the FDIC's actions when disposing of the assets of a bank *are* purely ministerial, and are not grounded in social or economic policy. As a result, these actions can serve as the basis for a counterclaim or affirmative defense.[11] In *FDIC v. Blue Rock Shopping Center, Inc.*, 766 F.2d 744, 753 (3d Cir.1985), the FDIC's recovery was barred when it impaired its collateral. *FDIC v. Harrison*, 735 F.2d 408, 410 (11th Cir.1984), affirmed a finding that the FDIC was estopped by its own negligent conduct from enforcing a loan guaranty.[12] Both *Franklin II*, 478 F.Supp. at 216, and *Harmsen*, 586 F.2d at 158, recognized that

if the FDIC actually takes control of a bank, it might be liable for negligent decisions made and actions taken thereafter. *See also Williams*, 599 F.Supp. 1184 (allowing counterclaim to be maintained for recoupment); *Imperial Bank*, slip op. at 2 (same); *Huang*, slip op. at 6 (allowing affirmative defenses).[13]

 When the FDIC acts in a purely proprietary capacity, for instance when it collects routine debts and manages routine assets, it can assume a duty to a bank. As defendants correctly argue, it would be extremely inequitable if the FDIC could negligently fail to collect on a loan, and then sue the directors and officers of the bank for the loss on the loan. The Court therefore holds that with respect to such proprietary functions, the FDIC is liable to the directors and officers of a bank for its own negligence. This negligence can be the basis of either an affirmative defense or a

*FDIC*, 369 F.Supp. 277, 280 (D.Colo.1974) (no duty to warn depositors). Girdlestone is correct that the legislative history of the Federal Deposit Insurance Act of 1950, 12 U.S.C. § 1811 *et seq.* (1980 and 1986 Supp.), indicates that Congress hoped that the Act would prevent losses to depositors. However, there is a difference between Congress expressing an intent to protect depositors (which it did), and Congress creating a actionable duty to warn depositors (which it did not).

**11.** The FDIC admits this proposition, at least as to affirmative defenses. As discussed above, *supra* at section II, this Court rejects the FDIC's artificial distinction between compulsory counterclaims for recoupment and affirmative defenses.

**12.** In *FDIC v. Roldan Fonseca*, 795 F.2d 1102, 1107–08 (1st Cir.1986), the Court held that equitable estoppel could not be asserted against the FDIC, where employees of the FDIC allegedly gave the owners of a piece of mortgaged property erroneous advice about the owners' rights concerning that property. The Supreme Court has been extremely reluctant to estop the government on the basis of erroneous advice by employees of the government. *See, e.g., Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). This reluctance rests primarily on considerations of sovereign immunity and separation of powers. *Phelps v. FEMA*, 785 F.2d 13, 17

(1st Cir.1986). No statute makes the government liable for the erroneous advice of its employees. By contrast, this case involves alleged negligence in the official acts of the agency itself, for instance in collecting on loans. The substantive provisions of the FTCA provide defendants the necessary waiver of the government's sovereign immunity in this case. Therefore, the fact that some defendants in this case have labelled some of their affirmative defenses as involving estoppel or waiver does not protect the FDIC from its otherwise actionable negligence, and these defenses are therefore proper.

**13.** To the contrary is *FDIC v. Dempster*, 637 F.Supp. 362 (E.D.Tenn., 1986), which struck all of the counterclaims and affirmative defenses which the directors and officers of a bank sought to raise against the FDIC. *Dempster* relied primarily on the separateness of the FDIC in its receivership capacity from the FDIC in its corporate capacity. *Id.* at 364–66. More persuasive authority holds that banking regulatory agencies cannot avoid liability for their actions simply by transferring claims from themselves in their receivership capacity to themselves in their corporate capacity. *Williams*, 599 F.Supp. at 1211. Most of the claims in *Dempster* were also dismissed in the alternative on the lack of duty ground which this Court does find persuasive. 637 F.Supp. at 366–67. The other cases cited by the FDIC dismissed claims on the lack of duty ground, not on the basis of *Dempster's* total immunity from counterclaims and affirmative defenses. *See, e.g., FSLIC v. Forde*, CV 85–744 WMB (C.D. Cal., Sept. 19, 1985).

compulsory counterclaim for recoupment.[14]

In general, the dividing line for the FDIC's negligence liability is the date it assumes receivership of a bank.[15] Before that time, the discretionary function exemption of the FTCA protects the FDIC from any liability for negligence in examining a bank, *Hudson County*, 599 F.2d at 564, or for negligence in the decision to impose or accept a receivership, *Jennings*, 615 F.Supp. at 468.[16] These are policy decisions which a court cannot second-guess.[17] After the FDIC makes the decision to become the receiver, it can be held liable for negligently performing proprietary tasks.

There are some exceptions to this general rule, however, in that some of the FDIC's decisions after the imposition of a receivership are still subject to the discretionary function exception. Prime among these is the decision to accept the bid of an assuming bank. The FDIC's duty in making this decision is not necessarily to minimize the liability of the directors and officers of a bank which has been placed in receivership. Replenishing the FDIC's insurance fund provides the FDIC with a strong incentive to accept the highest bid for the assets of a bank. However, there may be times when the FDIC's interest in protecting depositors, and its long-term interest in preventing future bank failures, may cause it to accept an immediate offer, or an offer with sounder financial support, over a nominally higher bid. *Cf. Gunter*, 674 F.2d at 871 (FDIC has discretion to choose between entering purchase and assumption transaction, or liquidating assets of a failed bank). These decisions are policy decisions, and cannot be reviewed for negligence because of the discretionary function exception.[18]

---

**14.** 12 U.S.C. § 1823(e) (1986 Supp.), which bars defendants from raising certain contract law affirmative defenses against the FDIC when the FDIC attempts to collect on notes in its possession, is obviously inapplicable to this case, which primarily involves tort claims and does not at all involve collecting on notes. Nor is this case similar to *Gunter*, 674 F.2d at 868–73, which is a matter of federal common law barred defendants from raising an affirmative defense of fraud when the FDIC attempts to collect on notes on which it is a holder in due course. Both § 1823(e) and *Gunter* attempt to protect the FDIC from the misfeasance of third parties, and do not support protecting the FDIC when it is itself negligent. *See also FDIC v. Rivera–Arroyo*, 645 F.Supp. 511, 521 (D.P.R. 1986) (section 1823(e) does not bar all counterclaims or defenses against the FDIC).

**15.** Defendant Girdlestone urges that the discretionary pre-receivership actions of the FDIC *can* be reviewed, under an "arbitrary and capricious" standard. This contention he derives from *dicta* in *Huntington Towers, Ltd. v. Franklin National Bank*, 559 F.2d 863, 868 (2d Cir. 1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978), and *Franklin I*, 445 F.Supp. at 734. The *Franklin II* court backed away from this *dicta*, 478 F.Supp. at 217, and other courts to have considered the discretionary function exception have held that "even a gross abuse of discretion will not predicate an award of tort damages." *Scanwell Laboratories, Inc. v. Thomas*, 521 F.2d 941, 948 (D.C.Cir.1975), *cert. denied*, 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); *see also Mitchell v. United States*, 787 F.2d 466, 468 (9th Cir.1986). Section 2680(a) by its own language creates its exception *"whether or not* the discretion involved be abused." (Emphasis supplied.) This Court need not address defendant's contention, however, because it is clear that defendants have not pled anything even remotely amounting to arbitrary and capricious action on the part of the FDIC. *Cf. Emch*, 630 F.2d at 528.

**16.** In fact, where as in this case state regulatory officials request the FDIC to act as receiver of a failed bank, the FDIC has no discretion to refuse the request. *See* 12 U.S.C. § 1821(e) (1980) ("Corporation *shall* accept appointment as receiver [of failed bank], if such appointment is tendered by the authority having supervision of such bank ... [under] State law.") (emphasis supplied). Obviously, the FDIC cannot be liable for accepting an appointment which it had no discretion to reject.

**17.** This is not to say that there are no circumstances under which the FDIC could become liable to a bank for actions taken before the imposition of receivership. If the FDIC "goes beyond [its] normal regulatory activities and substitutes its decisions for those of the officers and directors" of a bank, the FDIC may be liable for those decisions. *Franklin I*, 445 F.Supp. at 733–34. However, in this case not only have the defendants not pled such a pre-receivership takeover, but their pleadings make it clear that they could not plead one.

**18.** Defendant Girdlestone urges that he be allowed to conduct discovery on the issue of why, after FDIC examinations in 1980 and 1981 discovered unresolved problems at Garden Grove, the FDIC did not conduct examinations there in 1982 and 1983. The issue is not relevant. Even if the FDIC violated its own internal guidelines

738

The allegations by defendants which seek to raise issues within the discretion of the FDIC cannot stand. The FDIC's examinations of Garden Grove, its decision to accept a receivership over Garden Grove, and its acceptance of a bid by an assuming bank for the assets of Garden Grove, all are covered by the discretionary function exception. Thus, even if defendants' allegations are true that the FDIC acted negligently in making these decisions, the FDIC's recovery cannot be reduced as a result thereof. However, all of the defendants also allege that the FDIC, as the receiver of Garden Grove and especially later in its corporate capacity, failed to minimize the bank's damages, for instance by employing improper loan collection procedures. For such proprietary functions after having been appointed as receiver, the FDIC can be held liable for its negligence. To the extent that the counterclaims and the affirmative defenses raise this issue, they are proper, and the FDIC's motion to dismiss or strike them is denied.

IV. *Ruling*

Applying the standards set forth above, affirmative defenses Parsons 4, Girdlestone 2, and Ferrell 12 are stricken, as are subparagraphs (a), (b), and (c) of Parsons' affirmative defense 7 and subparagraphs (a), (b), and (c) of Carpenter's and Olson's affirmative defense 5. As to subparagraphs 55(a), (b), and (c) of both Olson's and Carpenter's counterclaims, the FDIC's motion to strike is also granted. All of the remaining affirmative defenses, as well as

the remaining portions of Olson's and Carpenter's counterclaims, at least potentially raise issues concerning the purely ministerial duties of the FDIC in carrying out the liquidation of Garden Grove.[19] As to these, the FDIC's motion to strike or dismiss is denied.[20]

in failing to follow up on Garden Grove, Girdlestone cannot reduce his liability as a result. The decision to audit, as well as the conduct of the audit, is within the discretionary function exemption. *Cf. Natural Gas Pipeline Co. v. United States,* 742 F.2d 502, 504–05 (9th Cir.1985) (failure to inspect protected by discretionary function exception). *See also, Hudson County,* 599 F.2d at 564 (FDIC internal guidelines do not create duty to banks). Of course, the 1982 recession strained the auditing and examining capabilities of the FDIC, when it began the rash of bank failures that is still with us.

19. Affirmative defense Carter 7 may not be stricken for the additional reason that it concerns not only the conduct of the FDIC, but also that of Carter's co-defendants.

20. Defendant Parsons, a director of Garden Grove, asserts in his opposition that even if the FDIC had no duty which ran to him prior to June 1984, under California law, he could reasonably rely on the reports which the FDIC in fact furnished him. Parsons also claims that the FDIC merely stands in the shoes of Garden Grove, and he can assert against the FDIC all of the affirmative defenses which he could assert against the bank. These contentions are not properly before the Court at this time, and the Court reserves judgment on them until such time as they are affirmatively raised in a motion by one of the parties.