### In re DONALD SHELDON & CO., INC., Debtor.

Don L. HORWITZ, Trustee for the Liquidation of Donald Sheldon & Co., Inc., Plaintiff,

v.

Donald SHELDON, and Mary Schad, Defendants.

Bankruptcy No. 85–6538A.

Adv. Nos. 89–6256A (FGC), 90–6684A (FGC).

United States Bankruptcy Court, S.D. New York.

May 5, 1993.

**662**

J.G. Strum, J.W. Schryber, and D.S. Pegno, of Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff (Trustee).

B.H. Finkelstein, C.R. Corbin, Jr., and M.J. Halow, of Finkelstein, Thompson & Loughran, Washington, DC, for defendant Donald Sheldon (Sheldon).

D. Ziegler, Reed Smith Shaw & McClay, Pittsburgh, PA, for defendant Mary Schad (Schad).

## MEMORANDUM OF DECISION OF AVAILABILITY OF DEFENSE OF MITIGATION OF DAMAGES

FRANCIS G. CONRAD, Bankruptcy Judge.[*]

This Memorandum of Decision details the reasons for our bench ruling striking[1] Defendants' affirmative defense of mitigation of damages prior to trial of the damages issue in this bifurcated proceeding. We have described previously the factual background and procedural history of this case in *Horwitz v. Sheldon (In re Donald Sheldon & Co., Inc.)*, 148 B.R. 385 (Bkrtcy. S.D.N.Y.1992). Additional background is provided in *Federal Insurance Co. v. Sheldon*, 150 B.R. 314 (S.D.N.Y.1993). Accordingly, this Memorandum sets out only those facts necessary to explain why we struck Defendants' mitigation of damages defense.

Donald Sheldon & Co., Inc. (DSCO) was a broker-dealer of securities. Sheldon was DSCO's Chairman and President. Schad served as Secretary–Treasurer and as Financial and Operations Principal. DSCO operated as a wholly-owned subsidiary of a holding company, Donald Sheldon Group, Inc.

On July 30, 1985, the Securities Exchange Commission ("SEC") filed a complaint in the District Court for the Southern District of New York against [DSCO] and certain of its affiliates alleging, *inter alia*, that DSCO had violated federal securities laws. The District Court entered an order on July 31, 1985, which *inter alia*, temporarily enjoined DSCO's broker-dealer operations and appointed [a] temporary receiver of DSCO. Upon the application of the Securities Investor

---

[*] Sitting by special designation.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C.A. § 1334(b), the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.), and 15 U.S.C.A. §§ 78eee(b)(2) and (b)(4). This is a core matter under 28 U.S.C.A. § 157(b)(2)(E) and (O). This Memorandum of Decision constitutes findings of fact and conclusion of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052.

Protection Corporation ("SIPC"), the District Court appointed [the temporary receiver] as trustee for the liquidation of DSCO under §§ 78eee(a)(3), (b)(1) and (b)(3) of the Securities Investor Protection Act of 1970 ("SIPA"). The liquidation proceeding was moved to this Court in accordance with § 78eee(b)(4) of SIPA....

... Trustee commenced this adversary proceeding ... to recover money and property of Debtor's estate allegedly lost as a result of Defendants' breach of duty.

Following a nine day trial, on July 24, 1992 the jury returned a verdict against Defendants on the liability issue.

*Sheldon, supra,* 148 B.R. at 386–87.

Trustee's *in limine* motion to strike the affirmative defense of mitigation of damages was made after the first jury found Defendants liable to Trustee for breach of their fiduciary duties to DSCO, but prior to the later determination by a second jury, on Feb. 4, 1993, that Sheldon's breach had caused $9,441,620 in damages, exclusive of interest and Trustee's costs of the action.[2] Our bench ruling granting Trustee's motion prior to the damages trial barred Defendants from introducing any evidence that Trustee had failed to mitigate damages in three areas. Defendants alleged:

—Trustee failed to investigate and prosecute any claims the estate might have had against DSCO's clearing agent, Security Pacific Clearing & Services Corp. (SEPAC), arising out of SEPAC's liquidation of securities collateralizing its loan to DSCO. Defendants alleged that failure resulted from a conflict of interest, because counsel for Trustee has also represented SEPAC.

—Trustee milked the estate, wasting its assets by incurring grossly excessive administrative expenses.

—Trustee failed to maximize the fund of "customer property" available to satisfy customer claims, but used it to pay administrative fees and costs.[3]

The opportunities for diversion, delay, and proliferation of evidentiary and procedural issues that would attend the unfettered exploration of these issues in a jury trial can hardly be overstated. Virtually every decision Trustee made from the outset of the case is implicated in one or more of these three areas. Moreover, most of the evidence offered in mitigation would be unrelated to the Trustee's case. Trustee sought damages for three specific items:

—Trustee spent $4.97 million to replace customer securities that DSCO hypothecated to SEPAC and SEPAC liquidated to repay itself. In addition, Trustee claims $514,000 in expenses incurred to administer the customer restitution program.

—A series of intercompany transfers left DSCO with a $2.7 million receivable that, Trustee alleged, was uncollectable at the time of the transfers.

—DSCO's failure resulted in the loss of good will, which Trustee valued as equal to the amount of debt outstanding at the time the SIPA liquidation proceeding was commenced—about $1.8 million.

While we are loathe to deprive a defendant of valid defenses, we believe that in this case proper procedure and appropriate policy converge, and concur to require that the defenses be stricken.

■ We note first that Defendants did not plead failure to mitigate damages as an affirmative defense in their answer to Trustee's Complaint. F.R.Civ.P. 8(c), made applicable to this proceeding by F.R.Bkrtcy.P. 7008(a), requires that "a par-

---

**2.** Adding yet more depth to this already procedurally rich case, Schad retained new counsel on the eve of the damages trial and waived her right to a jury. Her bench trial is forthcoming. Simultaneously, Sheldon chose, from among the options available to him, to dismiss his counsel and proceed *pro se* with the jury trial on damages. Accordingly, the jury's verdict was against Sheldon only.

**3.** "Customer property," a term of art in SIPA liquidations, is defined in 15 U.S.C.A. § 78*lll* (4) and 11 U.S.C.A. § 741(4). We construed those statutes as they applied to this controversy in *Sheldon, supra,* 148 B.R. 385.

ty shall set forth affirmatively ... any ... matter constituting an avoidance or affirmative defense." "Failure to plead an affirmative defense in the answer results in 'the waiver of that defense and its exclusion from the case.'" *Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984), *quoting* 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1278, at 339 (1969). While "[t]his rule is not iron-clad," it is enforced where the failure to plead results in surprise or prejudice. *Fidelity & Deposit Co. of Maryland v. Glenn (In re Glenn),* 108 B.R. 70, 73 (Bkrtcy.W.D.Pa. 1989). We believe that surprise and prejudice are sufficiently present here to warrant holding the defense waived. As late as December 7, 1992, in response to Trustee's requests for more specific information about Defendants' mitigation defense, Defendants' Counsel advised Counsel for Trustee:

> [Y]ou have the burden of proof as to the validity (type, amount, etc.) of each and every customer and non-customer claim paid or not paid by the Trustee, which are identified in your claim for damages. How we will show that the Trustee paid invalid customer claims, or paid valid customer claims in improper amounts, again is "trial strategy."

Exhibit 3 to "Trustee's Memorandum of Law in Support of His *In Limine* Motion on Mitigation of Damages and Related Evidentiary Issues." We simply refuse to allow Defendants latitude to attack "each and every ... claim paid or not paid by the Trustee" to establish an affirmative defense not pled.

■ As an alternative ground for our ruling, we hold that the failure to mitigate defense is unavailable to Defendants in the circumstances presented here as a matter of law. The availability of the failure-to-mitigate defense has been considered at length by a number of Courts in the context of actions brought by Federal Deposit Insurance Corp. (FDIC), Resolution Trust Corp. (RTC), and Federal Savings & Loan Insurance Corp. (FSLIC) against the officers and directors of failed financial institutions, and found to be legally insufficient. *See, e.g., FSLIC v. Shelton,* 789 F.Supp.

1367 (M.D.La.1992); *RTC v. Kerr,* 804 F.Supp. 1091 (W.D.Ark.1992); *RTC v. Greenwood,* 798 F.Supp. 1391 (D.Minn. 1992); *FDIC v. Crosby,* 774 F.Supp. 584 (W.D.Wash.1991); *FDIC v. Stanley,* 770 F.Supp. 1281 (N.D.Ind.1991); *FDIC v. Baker,* 739 F.Supp. 1401 (C.D.Cal.1990); *FSLIC v. Burdette,* 718 F.Supp. 649 (E.D.Tenn. 1989). We believe that some of the same policy considerations cited in those cases warrant holding that the defense is unavailable in this case.

The cases analyzing the availability of affirmative defenses against the liquidating agent of a failed financial institution who is in hot pursuit of the officers and directors alleged to be responsible for the institutions's failure, can be divided into three broad and sometimes overlapping categories: "dual capacity" cases, "regulatory/operational" cases, and "no duty" cases. The dual capacity cases turn on FDIC's role as both corporation and receiver. The regulatory/operational cases look to the nature of the function performed by the liquidating agent. No duty cases ask whether and to what extent a liquidating agent can be said to owe a duty to the officers and directors of the failed financial institution. We are persuaded by the policy arguments expressed in the no duty cases that these Defendants should be precluded from invoking the affirmative defense of failure to mitigate damages in this SIPA liquidation.

The dual capacity cases recognize that FDIC relates to financial institutions generally in its corporate capacity, and, when they fail, to insolvent institutions in its capacity as a receiver. This line of cases holds that affirmative defenses may not be asserted against the FDIC in one capacity for its actions in another capacity. *See, e.g., FDIC v. Manatt,* 723 F.Supp. 99, 105 (E.D.Ark.1989) (Defendant "cannot assert defenses against the FDIC as assignee based on actions taken by the FDIC in its corporate capacity prior to the assignment."); *FDIC v. Berry,* 659 F.Supp. 1475, 1482–83 (E.D.Tenn.1987) (Defendants "fail to comprehend the separate nature" of FDIC as receiver and FDIC as corporation).

Because those cases focus on statutory roles unique to FDIC, they are inapposite to our inquiry.

The regulatory/operational cases make availability of affirmative defenses against a liquidating agent contingent upon the function it is performing. The liquidating agent is said to owe a duty to officers and directors of failed financial institutions only when it performs functions variously described as ministerial, operational, or proprietary. Such a duty has been found to be enforceable by former officer/director defendants by way of affirmative defense and counterclaim. *See, e.g., FDIC v. Carter,* 701 F.Supp. 730, 736–37, 738 (C.D.Ca.1987) (FDIC's motion to strike certain affirmative defenses and counterclaims denied because they "raise issues concerning the purely ministerial duties of the FDIC."). When, however, FSLIC, FDIC, and RTC perform what is termed a "regulatory" or "discretionary" function, they enjoy immunity from affirmative defenses. *Id.;* A good example of this distinction can be found in *Carter,* which "was premised on what was perceived as an 'emerging consensus' that most of the FDIC's actions when disposing of the assets of a bank are purely ministerial and are not grounded in social and economic policy." *Baker,* supra, 739 F.Supp. at 1406.

When the FDIC acts in a purely proprietary capacity, for instance when it collects routine debts and manages routine assets, it can assume a duty to a bank. As defendants correctly argue, it would be extremely inequitable if the FDIC could negligently fail to collect on a loan, and then sue the directors and officers of the bank for the loss on the loan. The Court therefore holds that with respect to such proprietary functions, the FDIC is liable to the directors and officers of a bank for its own negligence. This negligence can be the basis of either an affirmative defense or a compulsory counterclaim for recoupment.

*Carter,* supra, 701 F.Supp. at 736–37. *Carter's* rationale is somewhat appealing as a general matter. We note, however, that the line it draws between proprietary and discretionary functions, even if it could be walked,[4] would sweep in far more situations than just the inequity at which it aims. We agree, at least in the abstract, that it makes perfect sense to hold that a defendant should be allowed to defend by proving that the liquidating agent actually created the hole for which it seeks to hold the defendant liable. *See, e.g., Kerr,* supra, 804 F.Supp. at 1100. It is an entirely different matter, however, to permit a defendant to reduce its own liability for blowing a hole in an institution's finances by proving that the liquidating agent could have used a smaller, less expensive patch. The latter situation is what is present here. None of the three matters for which Trustee seeks a recovery were within Trustee's power or control to prevent; each involved matters which had come to rest at the time he assumed control. Both the intercompany transfers that resulted in the uncollectable receivable and SEPAC's liquidation of the securities collateralizing its loan to DSCO took place before Trustee was appointed, and, indeed, caused the need to appoint him. In each case, damage was done—the hole punched—prior to Trustee's appearance on the scene. Part of that damage was DSCO's failure—by law, it could not continue to operate, 15 U.S.C.A.

---

**4.** The Supreme Court, in *United States v. Gaubert,* —— U.S. ——, ——, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335, 348–49 (1991), construed the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C.A. § 2680(a). That holding appears to us to have erased, with superior argument as well as authority, the line that *Carter* draws:

In light of our cases and their interpretation of § 2680(a), it is clear that the Court of Appeals erred in holding that the exception does not reach decisions made at the operational or management level of the bank involved in this case. A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly require [sic] judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planing level.

§ 78eee(b)—and the loss of its good will. We believe, based on the policy arguments contained in the no duty cases, that while Defendants were free to dispute the size of the hole, they were not free to argue about whether Trustee used the appropriate patch.

The no duty cases bar assertion of affirmative defenses against FSLIC, FDIC, and RTC when they sue the officers and directors of failed financial institutions on the theory that the agencies owe no duty to those officers and directors. We believe that the concerns which have led those Courts to strike affirmative defenses against FSLIC, FDIC, and RTC, apply as well in this case. In *FSLIC v. Roy,* 1988 WL 96570, 1988 U.S.Dist. LEXIS 6840 (D.Md.1988), for example, FSLIC sued former officers and directors of a failed savings and loan for negligence in approving certain commercial loans. Defendants alleged contributory negligence and assumption of the risk as affirmative defenses. The Court struck both defenses, ruling:

> FSLIC has been created for the purpose of preserving the integrity of the national banking system by providing an insurance fund to cover the deposits of failed and failing institutions. FSLIC owes no duty to those institutions or to those whose negligence has brought them to the brink of disaster. Self-evidently, it is the public which is the intended beneficiary of FSLC, just as it is the public which is the beneficiary of the common law duty imposed upon officers and directors to manage properly the institutions entrusted to their care. Thus, nothing could be more paradoxical or contrary to sound policy than to hold that it is the public which must bear the risk of errors of judgment made by its officials in attempting to save a failing institution—a risk which would never have been created but for defendants' wrongdoing in the first instance.

*Id.,* 1988 WL 96570 at 2.

We believe this rationale also applies to a SIPA liquidation. SIPA created SIPC, a non-profit membership corporation to which all brokers or dealers registered under 15 U.S.C.A. § 78*o* (b), with certain exceptions not applicable here, must belong. 15 U.S.C.A. § 78ccc(a)(2)(A). Compulsory membership brings with it the obligation to pay assessments into the SIPC fund, 15 U.S.C.A. § 78ddd. When SIPC determines that a member has failed or is in danger of failing, and is insolvent, subject to a liquidation proceeding or receivership, out of compliance with securities laws or regulations, or whose records are in such disarray that it is unable to calculate whether or not it is in compliance, SIPC may ask a Court to issue a protective decree. 15 U.S.C.A. § 78eee(a)(3). If the Court finds that SIPC's determinations about the broker-dealer are correct and issues a protective decree, then it must "forthwith appoint, as trustee for the liquidation of the business of the debtor and as attorney for the trustee such persons as SIPC, in its sole discretion, specifies." 15 U.S.C.A. § 78eee(b)(3). Upon issuance of a protective decree and appointment of a trustee, the SIPC fund is available to the trustee, where necessary, to pay the liquidation expenses of a failed broker-dealer and reimburse its customers for losses up to specified limits. 15 U.S.C.A. § 78fff–3.

This statutory scheme clearly expresses an unequivocal Congressional intent to protect the public. Even though SIPC, unlike FSLIC, RTC, or FDIC, is not a governmental agency, it was, nevertheless, created by Congress for the purpose of protecting members of the public who invest in securities, and thereby enhancing and improving the commercial life of the nation. Indeed, the Second Circuit held, shortly after passage of the act, that its "primary purpose ... is to afford protection to public customers in the event broker-dealers with whom they transact business encounter financial difficulties and are unable to satisfy their obligations to their public customers." *SEC v. Alan F. Hughes, Inc.,* 461 F.2d 974, 977 (2d Cir.1972). By providing these protections to securities customers, Congress has thereby enhanced the integrity and attractiveness of investment in the nation's commercial and industrial sector, which redounds to the benefit of all its inhabitants. In a SIPA liquidation no less than in cases

involving RTC, FDIC, or FSLIC, allowing the officers and directors, whose wrongdoing caused the failure of the enterprise and put its customers' funds at risk, to reduce their liability by second-guessing the trustee would be to take money away from the public. Allowing Defendants to interpose a mitigation of damages defense against a SIPA trustee will dramatically increase the cost and complexity of actions to recover damages, and divert available resources from compensation to litigation. The diminished likelihood of recovery will, at the margin, cause a SIPA trustee to forego suit against those responsible for a broker-dealer's failure, shifting the burden to SIPC members, the investing public, and ultimately the public as a whole. To the extent that recoveries against wrongdoers are diminished, the assessments against broker-dealers and the costs of investment increase, reducing its attractiveness and impairing the financial health of the nation. 15 U.S.C.A. §§ 78ddd, 78eee(b)(5)(E), 78fff(e).

The Court in *Burdette, supra,* 718 F.Supp. at 662–64, also struck the affirmative defenses of contributory negligence and mitigation of damages, noting that allowing them would require the public, rather than the persons found guilty of wrongdoing, to bear the risk of possible errors of judgment by FSLIC as receiver. Particularly relevant to our situation is *Burdette's* focus on the need to create a climate in which a liquidating agent has the freedom to act swiftly, even at the risk of making some unwise choices, to stop the bleeding and maximize the value remaining to the failed institution's assets.

> In cases of the failure of a savings institution, it is important to the public that the receiver rapidly and efficiently convert the assets of that institution to cash to repay the losses incurred by the insurance fund and the depositors for deposits not covered. Suits by the FSLIC as a receiver to recover assets, or to recover damages for wrongdoing, should not be encumbered by an examination in court of the correctness of any specific act of the FSLIC in its receivership. The rule that there is no duty owed to the institution or wrongdoers by the FSLIC/Receiver is simply a means of expressing the broad public policy that the banking laws creating the FSLIC and prescribing its duties are directed to the public good, and that every separate act of the FSLIC as a receiver in collecting assets is not open to second guessing in actions to recover damages from wrongdoing directors and officers. If there is no wrongdoing by the officer or director, there can be no liability, but if wrongdoing is established, the officer or director should not be allowed to set up as a defense a claim that would permit the detailed examination of the FSLIC's action as a receiver.

*Id.,* at 663.

We believe that these policy concerns apply in equal measure in the context of a SIPA liquidation proceeding. Congress itself has commanded swift action. For example, the SEC and self-regulatory organizations are required to "immediately notify" SIPC of concerns about the financial stability of a SIPC member. 15 U.S.C.A. § 78eee(a)(1). A Court determining that a protective decree is warranted must "forthwith" appoint a trustee, 15 U.S.C.A. § 78eee(b)(3), and remove the case to a Court with jurisdiction over bankruptcy cases. 15 U.S.C.A. § 78eee(b)(4). The trustee is required to investigate the operation of the debtor's business and report its results to SIPC "as soon as practicable." 15 U.S.C.A. § 78fff–1(d). Among the stated purposes of a liquidation proceeding is to make customers whole "as promptly as possible after the appointment of a trustee," 15 U.S.C.A. § 78fff(a), who is required to "promptly discharge ... all obligations of the debtor to a customer relating to ... securities." 15 U.S.C.A. § 78fff–2(b). SIPC fund moneys must be advanced to the trustee up to certain limits "to provide for prompt payment and satisfaction of ... claims of customers." 15 U.S.C.A. § 78fff–3(a). Congress has commanded customer damages be repaired promptly. Our experience in this adversary proceeding alone persuades us that permitting damage doers to second-guess the trustee's

attempts to repair that damage will only delay, prolong, and increase the cost of carrying out the Congressional mandate.

We are also in accord with the very practical observation in *Burdette* that striking the defenses would allow the Court and the jury to better focus on the real issues presented and prevent "a flood of evidence as to every ... discretionary decision." *Burdette*, supra, 718 F.Supp. at 664.

One final reason for striking the affirmative defenses in the context of a SIPA liquidation is that SIPA itself, in combination with the Bankruptcy Code, creates structures of accountability. 15 U.S.C.A. §§ 78fff–1(a), (c), (d). Both SEC and SIPC are authorized to participate as parties. 15 U.S.C.A. §§ 78eee(c), (d). The SIPA trustee is accountable both to SIPC and to the Court for his actions. SIPC, as a membership organization comprised of the entities which must bear the costs for a trustee's error and inefficiency, has a strong interest in overseeing his activity. SIPA requires that we review and approve the trustee's application for his fees and expenses incurred in carrying out his duties, and that we "place considerable reliance on the recommendation of SIPC" in ruling on his application. 15 U.S.C.A. § 78eee(b)(5). Trustee's duty runs, not to Defendants, but to injured customers, SIPC, and this Court. Accordingly, we believe that review of Trustee's activities is best conducted, not by those who have caused the damage, but by those Congress has charged with responsibility for that task and who must foot the bill for repairing the damages caused.

For the foregoing reasons, we granted Trustee's *in limine* motion to strike Defendants' mitigation of damages defenses.